ARNOLD G. LEO et al., Respondents, v GENERAL ELECTRIC COMPANY, Appellant.

Second Department, March 13, 1989

APPEARANCES OF COUNSEL

*Rivkin, Radler, Dunne & Bayh (Leonard L. Rivkin, Joseph J. Zedrosser* and *Eugene S. R. Pagano* of counsel), for appellant.

*Silverman & Harnes (Sidney B. Silverman* of counsel), for respondents.

OPINION OF THE COURT

HARWOOD, J.

We are called upon to determine whether commercial fishermen and their representative associations are aggrieved by the discharge of pollutants into public waters, resulting, for reasons of public safety, in a ban by the New York State Department of Environmental Conservation (hereinafter DEC) on the sale of striped bass throughout New York State. We hold that the plaintiffs have standing to maintain the instant action. We also reject the defendant's argument that plaintiffs' claims for monetary and injunctive relief have been preempted by Federal legislation. We therefore conclude that the Supreme Court properly declined to dismiss the complaint.

It is not disputed that over a 30-year period the defendant discharged a total of at least 500,000 pounds of polychlorinated biphenyls (hereinafter PCBs) from two of its manufacturing plants into the Hudson River. The PCBs collected on the river floor and were absorbed by the marine life, including

the striped bass, a species which returns to the Hudson River each year to spawn. When the defendant became aware of the highly toxic effect of PCBs is one of the issues to be determined in this litigation. In 1975 the DEC commenced a proceeding to enforce various provisions of the Environmental Conservation Law against the defendant and to enjoin or limit its discharge of PCBs. Following an interim finding that defendant was responsible for the presence of PCBs in the Hudson River and its marine life, that proceeding was settled and, apparently in 1977, the defendant ceased all discharge of PCBs into the Hudson River. Subsequent studies showed that excessively high levels of PCBs had been absorbed by the striped bass, and, in 1985, the DEC imposed a ban on the sale of striped bass fished from the lower Hudson and western Long Island waters. In 1986, after commencement of this litigation but before the defendant moved to dismiss the complaint, the DEC banned the fishing of striped bass anywhere in the State for either commercial or recreational purposes *(see,* 6 NYCRR 11.3). It appears that the ban will remain in effect for some time to come. Methods for removal of PCBs from the Hudson River are still under study by the DEC and the United States Environmental Protection Agency.

The individual plaintiffs, each a member of one of the plaintiff associations, are commercial fishermen who, as a means of earning a livelihood, fish the Hudson River or the waters of Long Island. The plaintiffs allege in their complaint that the defendant intentionally discharged PCBs into the river in spite of its awareness of their toxicity and in reckless disregard of the consequences. They also allege that the defendant negligently allowed PCBs to enter the river through percolation and runoff from contaminated earth used by the defendant as a dumping ground, and that the defendant intentionally or recklessly failed to adopt effective means for the removal of PCBs from the river. The plaintiffs claim that the sale of striped bass accounted for a substantial part of a commercial fisherman's income, that as commercial fishermen they have a special interest in use of public waters, that this special interest was invaded by the defendant's pollution of the water and contamination of the fish and, in effect, that the defendant's creation of a public nuisance had and will continue to have a devastating effect upon the individual plaintiffs' ability to earn a living. As indicated, they seek damages and injunctive relief.

Pollution of navigable public waters which causes death

to or contamination of fish constitutes a public nuisance *(see,* Restatement [Second] of Torts § 821B [1]; *cf., Caso v District Council 37, Am. Fedn. of State, County & Mun. Employees,* 43 AD2d 159). It is settled law in this State that, in the absence of special damage, a public nuisance is subject to correction only by a public authority *(see, Copart Indus. v Consolidated Edison Co.,* 41 NY2d 564, 568, *rearg denied* 42 NY2d 1102; *Graceland Corp. v Consolidated Laundries Corp.,* 7 AD2d 89, 91, *affd* 6 NY2d 900). "It is equally clear, however, that one who suffers damage or injury, beyond that of the general inconvenience to the public at large, may recover for such nuisance in damages or obtain [an] injunction to prevent its continuance. This is old law" *(Graceland Corp. v Consolidated Laundries Corp., supra,* at 91; *Callanan v Gilman,* 107 NY 360). If there is some injury peculiar to a plaintiff, a private action premised on a public nuisance may be maintained *(Graceland Corp. v Consolidated Laundries Corp., supra,* at 91; *cf., Callanan v Gilman, supra,* at 370-371). Allegations of pecuniary injury may be sufficient to satisfy the peculiar injury test *(see, Francis v Schoellkopf,* 53 NY 152) so long as the injuries involved are not common to the entire community exercising the same public right *(see, Burns Jackson Miller Summit & Spitzer v Lindner,* 59 NY2d 314; *Francis v Schoellkopf, supra).*

It cannot be gainsaid that profound damage common to the entire community has been caused by the pollution of our waters. However, assuming the allegations of the complaint to be true, as we must on a motion to dismiss, the breadth and depth of the tragedy do not preclude a determination that a peculiar or special harm has also been done to these plaintiffs: diminution or loss of livelihood is not suffered by every person who fishes in the Hudson River or waters of Long Island *(cf., Burns Jackson Miller Summit & Spitzer v Lindner, supra);* the harm alleged is peculiar to the individual plaintiffs in their capacity as commercial fishermen and goes beyond the harm done them as members of the community at large *(cf., Francis v Schoellkopf, supra; Callanan v Gilman, supra).*

Although no New York case has heretofore directly concerned the claims of commercial fishermen, we are in agreement with the reasoning in numerous decisions of our sister States which have addressed the issue and which have found that commercial fishermen do have standing to complain of the pollution of the waters from which they derive their living *(see, Carson v Hercules Powder Co.,* 240 Ark 887, 402 SW2d

640; *Hampton v North Carolina Pulp Co.,* 223 NC 535, 27 SE2d 538; *Columbia Riv. Fishermen's Protective Union v City of St. Helens,* 160 Ore 654, 87 P2d 195). Federal decisions have similarly upheld this right *(see, State of Louisiana ex rel. Guste v M/V Testbank,* 524 F Supp 1170; *Pruitt v Allied Chem. Corp.,* 523 F Supp 975; *Burgess v M/V Tamano,* 370 F Supp 247, *affd* 559 F2d 1200), as we do now.

We also reject the defendant's argument that the plaintiff associations lack standing to sue in a representative capacity. The three-pronged test set forth in *Warth v Seldin* (422 US 490), repeated in *Hunt v Washington Apple Adv. Commn.* (432 US 333), and adopted in this State in *Matter of Dental Socy. v Carey* (61 NY2d 330) makes it clear that the plaintiff associations are proper parties to this action. Since the plaintiff associations seek, *inter alia,* some form of prospective relief, it can reasonably be supposed that, if ultimately granted, it will inure to the benefit of the members actually injured *(cf., Warth v Seldin, supra).* Moreover, each of the members would have standing to sue in his own right and the interests the associations seek to protect are germane to the organizations' purposes *(see, Hunt v Washington Apple Adv. Commn., supra; Matter of Dental Socy. v Carey, supra).* Although money damages are sought, the requested relief does not make the individual participation of "each" injured member "indispensable to proper resolution of the cause" *(Warth v Seldin, supra,* at 511).

The defendant's assertion that this State's common law of nuisance has been preempted by the Federal Water Pollution Control Act (hereinafter FWPCA) (33 USC § 1251 *et seq.),* the Comprehensive Environmental Response, Compensation, and Liability Act (hereinafter CERCLA) (42 USC § 9601 *et seq.)* and the Toxic Substances Control Act (hereafter TSCA) (15 USC § 2601 *et seq.)* is without merit. Preemption of State law is not favored *(see, Commonwealth Edison Co. v Montana,* 453 US 609) and each of the statutes on which the defendant relies contains specific provision for retention of the rights of citizens to maintain private actions under the law of the state where the pollution originated *(see,* 33 USC § 1365 [e]; 42 USC § 9652 [d]; 15 USC § 2619 [c] [3]). In light of these savings clauses, we cannot agree with the defendant's conclusion that the cumulative and comprehensive nature of FWPCA, CERCLA and TSCA evidences a legislative intent to preempt State law *(see, International Paper Co. v Ouellette,* 479 US 481; *New York Dept. of Social Serv. v Dublino,* 413 US 405).

Accordingly, the order should be affirmed insofar as appealed from.

LAWRENCE, J. P., KUNZEMAN and KOOPER, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.