The STATE OF NEW YORK and the Town of Tusten, Plaintiffs,

v.

SCA SERVICES, INC., John Cortese Construction Corporation, John Cortese, and Sheldon Wernick, Defendants.

SCA SERVICES, INC., John Cortese Construction Corporation, John Cortese, and Sheldon Wernick, Third–Party Plaintiffs,

v.

ROBERTS & CARLSON, INC., Continental Can Company, Inc., BASF Corporation (Inmont Division), Kay–Fries Inc., National Starch and Chemical Corporation, Consolidated Edison Company of New York, Inc., and John Does 1–99, Third–Party Defendants.

No. 83 Civ. 6402 (RPP).

United States District Court, S.D. New York.

Jan. 9, 1991.

Robert Abrams, Atty. Gen. of the State of N.Y., New York Dept. of Law, Environmental Protection Bureau, Albany, N.Y. by Michael J. Moore and Goldstein & Stoloff, Monticello, N.Y. by Carl P. Goldstein, for Town of Tusten.

Saul, Ewing, Remick & Saul, Philadelphia, Pa. by John F. Stoviak and Stecher, Jaglom & Prutzman, New York City by L. Donald Prutzman, Jr., for SCA Services, Inc.

Clifford Gordon, Monticello, N.Y. by Clifford Gordon, for John Cortese and John Cortese Const. Corp.

Solomon & Simon, Livingston, N.J. by Arnold L. Simon, for Sheldon Wernick.

McCarter & English, Newark, N.J. by John A. McKinney, for Roberts & Carlson, Inc.

Dickerson & Reilly, New York City by John H. Reilly, for Continental Can Co., Inc.

Patton, Boggs & Blow, Washington, D.C. by Elliott P. Laws, for BASF Corp. (Inmont Div.)

Jackson & Nash, New York City by George S. Flint, for HULS America, Inc. (successor to Kay–Fries Inc.)

Bernstein & Milner, New York City by Roger J. Bernstein, for National Starch and Chemical Corp.

Consolidated Edison Company of New York, Inc., New York City by Michael A. Wilcken, for Consol. Edison Co. of New York.

## OPINION AND ORDER

ROBERT P. PATTERSON, JR., District Judge.

This is an action by a state and a municipality to recover response costs and damages under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), *as amended,* 42 U.S.C. § 9601 *et seq.* (1988), and under New York common law. Plaintiffs base their claims on the alleged release of hazardous substances from a landfill once located on the Delaware River in the Town of Tusten in Sullivan County, New York ("the site"). Plaintiff Town of Tusten ("the Town") now moves pursuant to Fed.R. Civ.P. 12(c) for judgment on the pleadings dismissing the third, fourth, fifth and a portion of the seventh counterclaims asserted by defendant SCA Services, Inc. ("SCA") against the Town. For the reasons set forth below, the Town's motion is denied in its entirety; all portions of the third, fourth, fifth or seventh counterclaims in which SCA seeks to recover attorney's fees are stricken by the Court *sua sponte.*

## BACKGROUND

From 1970 through 1981, defendants John Cortese and John Cortese Construction Corporation ("Cortese Construction") operated a landfill ("the Cortese landfill") on a flat, grassy five-acre site ("the site") located approximately 400 feet west of the Delaware River in the Town of Tusten, Sullivan County, New York. The Cortese

landfill accepted household, commercial, municipal, industrial and chemical waste.[1] Barrels of waste were allegedly either dumped into open trenches and flattened with a bulldozer or were emptied into the trenches and the barrels salvaged for reuse. Amended Complaint filed June 19, 1985 ¶ 46 (hereinafter "Amended Complaint").

Defendant Sheldon Wernick is a New Jersey resident who plaintiffs allege acted as a broker or middleman for the disposal of industrial and chemical waste at the site. Cortese and Cortese Construction admit that they accepted 200–300 barrels of waste from Wernick's principal(s) in 1973 and 1974. *See* Answer of Cortese and Cortese Construction ¶ 17.

Defendant SCA is a Delaware corporation with subsidiaries engaged in the business of treating, storing, transporting and disposing of industrial and chemical waste. SCA acknowledges that it has uncovered documents showing that in 1973 and 1974, drivers for Gaess Environmental Services Corporation ("Gaess"), a wholly owned subsidiary of SCA at the time, may have delivered waste to the Cortese landfill for disposal. *See* Answer of SCA ¶¶ 19 & 30. SCA's third-party complaint alleges that the Gaess deliveries involved as many as 480 barrels of industrial and chemical waste generated by the third-party defendants. Third–Party Complaint of SCA Services, Inc. filed January 17, 1989 ¶¶ 37–45. Plaintiffs simply allege that in 1973 and 1974 SCA delivered "several thousand barrels" of waste containing "hazardous substances" as defined in 42 U.S.C. § 9601(14). Amended Complaint ¶ 25.

In September 1980, the New York Department of Environmental Conservation ("DEC") declared the Cortese landfill an "open dump" within the meaning of § 6903(14) of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42

---

1. The Town allegedly acquired title to a portion of the five-acre site between 1970 and 1981 and allegedly continues to own that portion of the site. *See* Answer of SCA Services, Inc. filed January 17, 1989 ¶ 285 (hereinafter "Answer of SCA"); Answer of John Cortese and John Cortese Construction Corporation filed June 12,

1984 ¶¶ 44 & 46 (hereinafter "Answer of Cortese and Cortese Construction"). SCA in its pleadings attributes the release of hazardous substances in whole or in part to the Town's disposal of waste materials at the site. Answer of SCA ¶ 292.

U.S.C. § 6901 *et seq.* (1988).[2] Monitoring conducted by the State on and off the site detected the presence of toxic metals and organic chemicals in the groundwater. A public well located approximately 1500 feet from the site is allegedly no longer suitable for use as a water supply for the Town of Tusten. Amended Complaint ¶ 13.

Plaintiffs commenced this action on August 29, 1983. The complaint alleges that John Cortese and Cortese Construction are liable under § 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2) (1988), as owners and operators of a facility where hazardous substances were disposed of.[3] The complaint alleges that Wernick is liable under § 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3) (1988), as a person who arranged for the transport of hazardous substances to the site for disposal.[4] Finally, the complaint alleges that SCA is liable under § 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4) (1988), as a transporter of hazardous substances.[5] Under the amended complaint filed June 19, 1985, plaintiffs seek to hold all defendants jointly and severally liable (1) under CERCLA for response costs and injury to the wildlife, air, water and soil resources of the State;[6] (2)

under New York law for creating and contributing to the maintenance of a public nuisance; and (3) under New York law for restitution of plaintiffs' expenditures in investigating the scope of the chemical contamination at the site and the scope of the resulting nuisance. The State of New York joined in these claims on its own behalf and as *parens patriae* on behalf of residents of the State of New York.

On June 12, 1984 John Cortese and Cortese Construction asserted cross-claims against SCA and Wernick and a counter-claim against plaintiffs for contribution, indemnification and damages. Defendant Wernick has cross-claimed for indemnification from SCA, Cortese and then-defendant Samuel White.[7]

Without admitting liability in this action, SCA entered into a stipulation signed by all parties to the main action filed on June 10, 1985 and amended at least once thereafter. The stipulation requires SCA to conduct at its own expense a comprehensive technical study of conditions at the site (pursuant to a "Plan for Remedial Investigation and Feasibility Study of the Cortese Landfill, Narrowsberg, New York."). Plaintiffs

2. RCRA prohibits the unrestricted "open dumping" of hazardous waste. 42 U.S.C. § 6945 (1988).

3. CERCLA imposes strict liability upon any person "who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of...." 42 U.S.C. § 9607(a)(4) (1988).

4. CERCLA imposes strict liability upon any person "who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity containing such hazardous substances...." 42 U.S.C. § 9607(a)(3) (1988).

5. CERCLA imposes strict liability upon any person who "accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance." 42 U.S.C. § 9607(a)(4) (1988).

The Amended Complaint also alleges generally that SCA "arranged for disposal of" wastes containing "hazardous substances" under CERCLA. Amended Complaint ¶ 27. *See* 42 U.S.C. § 9607(a)(3) (1988).

6. CERCLA allows recovery of (1) all costs of removal or remedial action incurred by a state not inconsistent with the national contingency plan; (2) any other necessary costs incurred by any other person consistent with such a plan; and (3) damages for injury to, destruction of or loss of natural resources, including the reasonable costs of assessing such injury, destruction or loss. 42 U.S.C. § 9607 (1988).

7. The original complaint in this action charged White with liability as an owner of a "facility" as defined in 42 U.S.C. § 9601(9) from which hazardous substances are being released. Under a stipulation filed on April 27, 1984, plaintiffs voluntarily discontinued the action without prejudice as against White in return for his granting any party, its agents, employees or contractors access to property he owned alongside the site. The property allegedly contains a contaminated lagoon which drains into the Delaware River. Complaint filed Aug. 29, 1983 ¶ 10.

thereafter filed an amended complaint on June 19, 1985.[8]

On January 17, 1989 SCA filed an answer to plaintiffs' amended complaint.[9] SCA denied that any "release" as defined in § 101 of CERCLA, 42 U.S.C. § 9601(22) (1988), has occurred or is presently occurring at the site, denied that the site poses any threat of harm to the public or natural resources and claimed that Gaess transported waste to the site in good faith reliance on permits and approvals issued by the State to Cortese and Cortese Construction and on plaintiffs' site inspections. Answer of SCA at ¶¶ 15 & 19–30. SCA also asserted counterclaims against the Town of Tusten for indemnification and/or contribution seeking to hold the Town jointly and severally liable for costs incurred by SCA under the June 10, 1985 stipulation as well as for all legal fees and engineering and other costs incurred by SCA in connection with responding to conditions at the site.[10] The Town brought the present motion for judgment on the pleadings dismissing certain of SCA's counterclaims. The parties stipulated that the motion be decided on the papers without oral argument.

## DISCUSSION

In a Rule 12(c) motion for judgment on the pleadings, the Court may consider only the allegations in the pleadings and a complaint or claim should not be dismissed unless it appears beyond doubt that the claimant can prove no set of facts in support of the claim. *See George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977); 5A Wright & Miller, *Federal Practice and Procedure* § 1367 at 510 (2d ed. 1990) ("The motion for judgment on the pleadings only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain" such as construction of a will or statute or when the claim is barred by a valid statute of limitations defense).[11]

1. The Town's Request for Judgment Dismissing SCA's Third and Fourth Counterclaims for Redundancy

SCA's third counterclaim seeks reimbursement of and/or contribution from the Town for all costs and fees—legal, engineering and otherwise—SCA has incurred and will continue to incur in connection with responding to conditions at the site. The third counterclaim rests on the theory that the Town will be unjustly enriched as a partial owner of the site if SCA bears these costs. Answer of SCA ¶¶ 332–35. SCA's fourth counterclaim against the Town is for indemnification, contribution and damages based on common law negligence. *Id.* ¶¶ 336–50.

The Town argues in its brief that counterclaims three and four are wholly or partially "duplicitous" of SCA's seventh and seventh counterclaims, respectively,

---

8. The Amended Complaint omitted White as a defendant and consolidated the eight original causes of action into the three claims for relief set forth *supra.*

9. At that time, SCA also filed a third-party complaint against entities who allegedly owned the waste delivered by Gaess to the site in 1973 and 1974. The third-party action seeks indemnification and contribution should any party recover against SCA in this action and seeks damages under 42 U.S.C. § 9607(a)(3).

On April 27, 1989 this Court stayed a motion to dismiss the third-party complaint brought by the third-party defendants and stayed all discovery in this action pending submission of the Remedial Investigation and Feasibility Study ("RI/FS") by SCA and the State. On September 28, 1990 the U.S. Environmental Protection Agency ("EPA") and SCA entered into an "Administrative Order on Consent for Remedial Investigation/Feasibility Study," Index No. II CERCLA–00217, under which completion of the RI/FS is scheduled for February 1995.

10. SCA filed separate counterclaims against the State of New York on February 9, 1990. SCA and the State of New York entered a stipulation filed on August 1, 1990 under which SCA withdrew its counterclaims against the State of New York and the State withdrew its motion to dismiss the counterclaims. The stipulation stayed any remaining issues between the two parties until January 1, 1991.

11. The Town has presented matters outside the pleadings in connection with its motion. The Court hereby excludes the affidavit of Carl Goldstein and declines to convert the Town's motion for judgment on the pleadings into a motion for summary judgment.

and should be dismissed. SCA's seventh counterclaim against the Town is pleaded as a claim for restitution and its sixth counterclaim is for restitution, indemnification and/or contribution. *Id.* ¶¶ 361–71.

An indictment in a criminal case is duplicitous when it joins in a single count two or more distinct, separate offenses. *See United States v. Droms,* 566 F.2d 361, 363 (2d Cir.1977). In a civil action, the proper method by which to challenge redundant matter in any pleading is by a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure. Counsel for the Town cites no authority, nor is the Court aware of any, which permits judgment on the pleadings dismissing an entire count for redundancy in place of striking the redundant matter pursuant to Rule 12(f). *See* 5A Wright & Miller, *Federal Practice and Procedure* § 1369 at 533–34 (2d ed. 1990) (Rule 12(f) "serves as a pruning device" whereas Rule 12(c) "is directed at gaining a final judgment on the merits").

Counsel for the Town has failed to offer any authority demonstrating that (1) causes of action for unjust enrichment and restitution and (2) causes of action for negligence and restitution, indemnification and contribution are redundant. Counsel for SCA has failed to offer any authority showing that they are not, other than stating that the causes of action have different names. Accordingly, the Town's motion for judgment on counterclaim three and a portion of counterclaim four on the grounds of redundancy is hereby denied. However, the Court will strike counterclaims three and four *sua sponte* within 30 days from the date of entry of this order unless counsel for SCA demonstrates by filing a memorandum of law that the legal theories behind counterclaims three and seven, and four and six, do not involve proof of identical material facts and would not entitle SCA to the same relief.

2. The Town's Request for Judgment Dismissing a Portion of SCA's Third, Fourth, Fifth and Seventh Counterclaims

■ The Town seeks judgment as a matter of law dismissing any claim for attor-

ney's fees asserted in counterclaims three, four, five or seven. Attorney's fees are not recoverable in the absence of statutory provision therefore. *See Alyeska Pipeline Co. v. Wilderness Soc'y,* 421 U.S. 240, 262, 95 S.Ct. 1612, 1624, 44 L.Ed.2d 141 (1975), *superseded by* 42 U.S.C. § 1988 (1976) (allowing attorney's fees in §§ 1981–83 and §§ 1985–86 actions); *Lewis v. S.L. & E., Inc.,* 629 F.2d 764, 773 (2d Cir.1980). Therefore it is necessary to ascertain whether CERCLA provides sufficient statutory authority for the recovery of attorney's fees.

The prevailing rule is that attorney's fees are not recoverable as response costs in actions under § 107 of CERCLA brought by private litigants. *See State of Idaho v. Hanna Mining Co.,* 882 F.2d 392, 396 (9th Cir.1989); *Mesiti v. Microdot, Inc.,* 739 F.Supp. 57, 62–63 (D.N.H.1990); *In re Hemingway Transp., Inc.,* 108 B.R. 378, 383 (Bankr.D.Mass.1989); *T & E Indus., Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 707–08 (D.N.J.1988). *But see General Elec. Co. v. Litton Business Sys., Inc.,* 920 F.2d 1415 (8th Cir.1990). The rationale for disallowing attorney's fees is that:

[i]f Congress had intended to permit citizens seeking response costs to recover their attorney fees, it would simply have amended § 107 to allow the recovery of these litigation costs. SARA [the Superfund Amendments and Reauthorization Act of 1986] was a comprehensive overhaul of CERCLA. Therefore, it would have been a simply [sic] matter to amend § 107 to allow recovery of attorney fees.

*Regan v. Cherry Corp.,* 706 F.Supp. 145, 149 (D.R.I.1989) (rejecting argument that sections 107 and 310(c) of CERCLA both permit reimbursement of cleanup costs with the only difference being that § 107 allows recovery of attorney's fees). Rather than grant the Town judgment on the pleadings as to only part of each counterclaim, the Court instead strikes the portions of counterclaims three, four, five and seven regarding litigation costs and attorney's fees *sua sponte* pursuant to Rule 12(f). *See T & E Indus.,* 680 F.Supp. at 708. Accordingly, the Town's motion for

judgment on counterclaims three, four, five and seven based on the improper claim of attorney's fees is denied.

3. The Town's Request for Judgment Dismissing SCA's Fourth Counterclaim as a Matter of Law

■ SCA's fourth counterclaim, amended as a result of the Court's *sua sponte* action, alleges that if a release of hazardous substances occurred at the site, the Town is liable for indemnification, contribution and damages on a theory of common law negligence. Answer of SCA ¶¶ 336–50. SCA alleges that the Town was negligent with respect to the generation, transportation, and disposal of waste at the site and with respect to its ownership and operation of and its activities at the site. The Town seeks judgment dismissing the counterclaim as a matter of law on the grounds that (1) SCA failed to allege any duty owed to it by the Town and (2) SCA cannot hold the Town liable for the Town's alleged failure to enforce regulations, laws or ordinances involving the site because SCA failed to allege the existence of a "special relationship" requiring the Town to perform its governmental functions for the benefit of SCA.

SCA, as the proponent of a claim based on negligence, must plead facts showing (1) the existence of a duty owed to the pleader; (2) breach of such duty; (3) causation; and (4) damages. *See Stewart v. Wilkinson,* 127 A.D.2d 962, 512 N.Y.S.2d 566 (1987) (where plaintiff failed to allege that boulders causing injury were located within highway right-of-way, complaint dismissed because "complaint therefore does not allege a duty owed by Donato to plaintiff.") SCA's fourth counterclaim realleges paragraphs 285–92 and 296–99 which allege, and alleges in paragraphs 337 and 340–43, that the Town had certain affirmative duties with respect to the Cortese site, that the Town owned and operated, inspected, permitted operation of and directed disposal of waste at the site, as well as disposed of its own waste there, with the knowledge that the conditions and operations of the landfill were improper and unlawful, and that the Town was negligent in allowing what were known to be hazardous substances transported by SCA to be delivered to the site and in failing to perform its affirmative duties and responsibilities with respect to the disposal of waste at the site.

■ When a claim is made that a municipality has negligently exercised a governmental function, liability turns upon the existence of a "special duty" to the injured parties as opposed to the public at large. *Garrett v. Holiday Inns, Inc.,* 58 N.Y.2d 253, 261, 447 N.E.2d 717, 460 N.Y.S.2d 774 (1983). A special duty arises where a special relationship exists between the municipality and an individual or class of persons requiring the municipality to use reasonable care for those persons' benefit. *Id. See generally United States v. Hooker Chem. & Plastics Corp.,* 739 F.Supp. 125, 131–32 (W.D.N.Y.1990) (explaining special relationship doctrine).[12] Liability for failure to use reasonable care may be imposed, for instance, where the municipality has assumed positive direction and control under circumstances in which a known, blatant and dangerous safety violation exists. *See Garrett,* 58 N.Y.2d at 261, 460 N.Y. S.2d 774, 447 N.E.2d 717.

SCA has properly pleaded a special relationship giving rise to a duty, allegedly breached by the Town, to enforce various land use and environmental statutes and regulations as they applied to the Cortese site. SCA has alleged that the Town inspected the site in 1973, that the Town's Supervisor "believed that the situation caused by the disposal of industrial waste at the Site was getting out of control," but that the Town continued to inspect the site, continued to accept waste containing hazardous substances from SCA at the site

---

**12.** The elements of a special relationship are (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) justifiable reliance by the injured party on the municipality's affirmative undertaking. *Cuffy v. City of New York,* 69 N.Y.2d 255, 260, 505 N.E.2d 937, 513 N.Y.S.2d 372 (1987).

and permitted the site to continue to operate as a landfill until 1981.[13] Answer of SCA at ¶¶ 279 & 341–42. *See Garrett*, 58 N.Y.2d at 262, 460 N.Y.S.2d 774, 447 N.E.2d 717 (allegations that town issued certificate of occupancy knowing that blatant fire and safety code violations existed pleaded a special relationship); *cf. Weiner v. D.F. Batchie Plumbing & Heating Co.*, 118 A.D.2d 850, 500 N.Y.S.2d 337 (1986) (granting summary judgment where complaint failed to allege and where plaintiffs failed to offer facts tending to show that city knew of dangerous condition when it issued permit for gas system).

■ Judgment on the pleadings would be inappropriate on SCA's fourth counterclaim. Whether a special duty has been breached is generally a question for the jury. *De Long v. County of Erie*, 60 N.Y.2d 296, 306, 457 N.E.2d 717, 469 N.Y.S.2d 611 (1983).[14] Accordingly, the Town's motion for judgment on SCA's fourth counterclaim is denied.

4. The Town's Request for Judgment Dismissing SCA's Fifth Counterclaim as a Matter of Law

■ SCA's fifth counterclaim, also amended as a result of the Court's *sua sponte* action, seeks to reduce or eliminate SCA's liability to the Town if SCA is ulti-

mately found liable on a theory of public nuisance under Count 2 of plaintiffs' amended complaint. The Town seeks judgment dismissing the counterclaim on the grounds that SCA has failed to allege that SCA suffered special damages as a result of the Town's alleged creation and maintenance of a public nuisance at the site.

■ An individual may maintain an action in tort when he suffers special damage from a public nuisance. *Copart Indus., Inc. v. Consolidated Edison Co.*, 41 N.Y.2d 564, 568–69, 362 N.E.2d 968, 394 N.Y.S.2d 169 (1977). SCA argues that paragraphs 325–26 and 328 of SCA's answer, realleged in paragraph 351, plead special damages in the form of SCA's out-of-pocket expenses in connection with the engineering and hydrogeological studies being performed at the site. Allegations of pecuniary injury are sufficient if they allege damages for injuries not common to the entire community exercising the same public right. *Leo v. General Elec. Co.*, 145 A.D.2d 291, 294, 538 N.Y.S.2d 844 (1989). *Cf. Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 451 N.E.2d 459, 464 N.Y.S.2d 712 (1983) (economic loss suffered by law firm as result of transit strike not recoverable in class action alleging public nuisance because class was alleged to include all businesses in New York City that rely on use of the transit system). Accordingly,

---

**13.** SCA has also sufficiently alleged facts tending to show that it is a member of a "special class" of persons injured by the Town's negligence. Essentially the special class in this action comprises those parties who relied upon the Town's inspections of the Cortese landfill. *But see O'Connor v. City of New York*, 58 N.Y.2d 184, 192, 447 N.E.2d 33, 460 N.Y.S.2d 485 (1983) (Wachtler, J., dissenting) (jurisprudential reform necessary because "[a] plaintiff's right to recover for negligently inflicted injury should not depend upon whether the plaintiff belongs to a legally accepted 'special class.'").

**14.** The Town relies upon *United States v. Hooker Chem. & Plastics Corp.*, 739 F.Supp. 125 (W.D.N.Y.1990), a case involving the Love Canal landfill, in support of this portion of its motion. In *Hooker Chemicals*, defendant Occidental Chemical Company ("OCC") cross-claimed against defendant Niagara County for "indemnity or contribution, pursuant to CERCLA or otherwise," *id.* at 126, for any damages for which OCC might be found liable to plaintiffs. The court

found OCC liable for response costs under § 107 of CERCLA and for damages under the New York common law of public nuisance. *Id.* OCC argued that the record established sufficiently negligent conduct by the County in failing to enforce public health laws to subject the County to liability for contribution for any response costs assessed against OCC. *Id.* at 129. The County's motion to dismiss OCC's cross-claim was converted to a motion for summary judgment.

The court held in *Hooker Chemical* that because OCC conceded the absence of any special duty on the part of the County toward OCC, OCC's cross-claim for contribution from the County must be dismissed. *Id.* at 134–35. SCA's position is wholly the opposite. SCA has asserted a counterclaim for negligence directly against the Town of Tusten, has alleged that the Town owed SCA certain affirmative duties and has alleged that the Town assumed sufficient direction and control of the Cortese landfill as to create a special relationship with SCA.

the Town's motion for judgment on SCA's fifth counterclaim is denied.

## CONCLUSION

The Town of Tusten's motion for judgment on the pleadings on SCA's third, fourth, fifth and part of the seventh counterclaim is denied. The Court strikes all claims for attorney's fees in counterclaims three, four, five and seven asserted against the Town of Tusten *sua sponte* pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Counsel for SCA are to file the memorandum of law described in section 1 of this opinion, *supra*, no later than 30 days from the date of entry of this opinion or the Court will dismiss counterclaims three and four in their entirety *sua sponte*.

All counsel are to attend a conference on Wednesday, January 23, 1991 at 9:00 a.m. in the designated courtroom in order to discuss, *inter alia*, submission of the RI/FS report and the status of the third-party defendants' pending motion to dismiss the third-party complaint.

IT IS SO ORDERED.