Dominick D. BOLOGNA, Dominick Bologna, and Westmore Fuel Co., Inc., Plaintiffs,

v.

KERR–MCGEE CORPORATION, Royal Petroleum, Inc., Park–Ohio Holdings Corp., Russell Burdsall & Ward, Inc., and A. Tarricone, Inc., Defendants.

No. 99 Civ. 3861 BDP.

United States District Court, S.D. New York.

May 10, 2000.

Sy Gruza, Beveridge & Diamond, New York City, for defendant Kerr–McGee.

John A. Rego, Jones Day Reavis & Pogue, Cleveland, Ohio, for Royal Petroleum, Park–Ohio Holdings, Russell Burdsall and A. Tarricone, Inc.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiffs Dominick D. Bologna, Dominick Bologna, and Westmore Fuel, Co., Inc. (collectively the "plaintiffs") bring this action against defendants Kerr–McGee Corp. ("Kerr–McGee"), Park–Ohio Holdings, Corp. ("Park–Ohio"), Russell Burdsall & Ward, Inc. ("RBW"), and A. Tarricone, Inc. ("Tarricone"), under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA") and New York State statutory and common law,[1] seeking damages for environmental contamination in and around an oil storage facility which they own. Plaintiffs claim that releases of hazardous substances, in particular petroleum formerly stored at their facility, have caused contamination of the surrounding air, ground and water, resulting in a diminution in the value of their property and requiring remediation. Before this Court is defendant Park–Ohio's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).[2] For the following reasons, the motion is granted in part and denied in part.

*BACKGROUND*

■ In deciding a motion under Rule 12(b)(6), the Court is required to accept as

Nicholas J. Damadeo, Smithtown, NY, for plaintiffs.

1. Plaintiffs' complaint asserts ten causes of action, including claims under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* Defendants moved to dismiss all ten causes of action. Plaintiffs apparently have abandoned claims 1, 3, and 6–10 as they have not opposed defendants' motion to dismiss those claims in their Memorandum of Law in Opposition to Park–Ohio Holdings Corp.'s Motion to Dismiss Pursuant to Rule 12(b)(6). The Opposition only addresses claims 2, 4 and 5, and presents no arguments in response to defendants' arguments for dismissal of the other claims.

2. Defendant Kerr–McGee joins Park–Ohio's motion except for those arguments made by Park–Ohio on the basis of its alleged status as owner of the land, but not as an operator of the facility.

true all factual allegations in the complaint and construe those allegations in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991). The following facts are construed accordingly.

## I Ownership of Facility

Plaintiffs are the present owners of an oil storage facility (the "facility") located at 2 Purdy Avenue in Port Chester, New York, which currently stores # 2 fuel oil. The facility is fenced in on the north, south and west sides and is bounded on the east by the Byram River, a navigable body of water. Plaintiff Westmore Fuel Co., Inc. ("Westmore") is the current operator of the facility. Defendants are all former owners or operators of the facility which plaintiffs allege "received, stored, and generated hazardous substances and hazardous wastes there." Complaint ¶ 3.

The chain of ownership of the property is as follows: From 1901 to 1974, RBW, formerly Russell, Burdsall and Ward Bolt and Nut Co. Inc., owned the facility. Royal Petroleum leased the property from RBW during all relevant times. In 1974, Park–Ohio acquired RBW. Also in 1974, title to the facility was transferred from RBW to Tarricone and defendant Kerr–McGee acquired Royal Petroleum. In January of 1988, Tarricone transferred title to the facility to plaintiffs and to Patsy Bologna as tenants in common. In December of 1990, Patsy Bologna transferred her one-third interest in the facility to plaintiff Dominick D. Bologna.

## II Facility Operations

At all relevant times, the facility was a petroleum bulk storage site. Plaintiffs allege that between 1901 and 1974, the period when RBW owned and Royal Petroleum leased and operated the facility, both # 6 and # 2 fuel oil were stored there. When Tarricone owned and operated the facility from December 1974 to January of 1988, only # 2 fuel oil was stored there.

From 1988 to the present, plaintiffs have stored only # 2 fuel oil at the site.

## III Environmental Problems

In 1994, plaintiffs retained Marin Environmental, Inc. ("Marin"), an environmental engineering company, to assess the contamination at and around the site, in part to determine whether it was more economically feasible to continue operations or to sell the facility. Marin was also to propose a method of remediation. In January of 1995, Marin issued a written report titled "Contamination Investigation at the Purdy Avenue Fuel Storage Facility, Port Chester, New York," which made the following findings:

- At least 3 separate releases of # 2 fuel oil occurred at least 20 years ago;
- One release of # 6 fuel oil occurred at least 40 years ago. This release is located on a relatively small portion of the site and appears to exist only in the dissolved phase.
- A large plume (7200 sq. ft.) of # 2 fuel oil is located at the center of the site and is flowing with groundwater toward the Byram River.
- Based on the age of contamination and the presence of # 6 fuel oil, the current site owner does not appear to be responsible for the site's ground water contamination.

In January of 1996, Marin prepared a Remedial Investigation and Remedial Action Plan to determine the full extent of the contamination and threatened future releases. The complaint alleges that plaintiff Dominick D. Bologna and Marin met with the New York State Department of Environmental Conservation to discuss a remediation plan in March of 1996 and agreed on a short term work plan which was memorialized in a letter from Marin to NYSDEC on May 17, 1996. *See* Exh. 1 to Affidavit of Dominick D. Bologna.

Throughout 1998, plaintiffs and all defendants except Tarricone engaged in settlement discussions to no avail. This ac-

tion was filed on May 27, 1999 seeking injunctive relief requiring defendants to clean up the site. The complaint asserts ten causes of action, seven of which apparently have been abandoned. *See supra* note 1. The remaining causes of action are: (1) defendants violated RCRA § 6972(a)(1)(B) and must remediate or assist in remediation of the property; (2) defendants violated Article 12 of New York Navigation Law; (3) a common law claim for public nuisance.

### DISCUSSION

■ A district court's function on a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is to assess the legal feasibility of the challenged claims. *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). The issue "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683, 40 L.Ed.2d 90. In determining the sufficiency of plaintiffs' claims, this Court is limited to considering the factual allegations in the complaint, the documents annexed to the complaint as exhibits or relied upon by the plaintiff and any matters of which judicial notice may be taken. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Still v. DeBuono,* 101 F.3d 888, 891 (2d Cir.1996). As noted earlier, allegations contained in the challenged pleading must be accepted as true and construed favorably to the plaintiff. *Walker v. New York,* 974 F.2d 293, 298 (2d Cir.1992).

### I RCRA Claim

■ Petroleum is considered a hazardous and solid waste under RCRA. *See* 42 U.S.C. § 6903(27) (defining solid waste); *United States v. Hill,* No. 95–CV–1716

(RSP/GJD), 1998 WL 278291, at *3 (N.D.N.Y. May 20, 1998) (leakage of petroleum into surrounding soil constitutes disposal of solid waste under RCRA); *Aurora Nat'l Bank v. Tri Star Mktg., Inc.,* 990 F.Supp. 1020, 1027 (N.D.Ill.1998) (same). Defendants do not contest this classification, but rather argue that plaintiffs fail to state a claim under RCRA because they have failed to allege that RBW "contributed to" waste disposal at the site as required by the statute. *See Aurora,* 990 F.Supp. at 1028.

■ " 'RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste.' " *Prisco v. A & D Carting Corp.,* 168 F.3d 593, 608 (2d Cir.1999) (quoting *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996)). "RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards." *Id.* (internal quotations omitted). Its purpose is "to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.' " *Meghrig,* 516 U.S. at 483, 116 S.Ct. 1251 (quoting 42 U.S.C. § 6902(b)).

In furtherance of that goal, RCRA contains a private attorney-general provision allowing citizen lawsuits for injunctive relief in certain circumstances. *See* RCRA § 7002, 42 U.S.C. § 6972; *Prisco,* 168 F.3d at 608. The circumstance at issue here is described in § 7002(a)(1)(B) (42 U.S.C. § 6972(a)(1)(B)), which provides

any person with a right of action against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the Eleventh Amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator

of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B).

Thus, in order to recover under this section, a RCRA plaintiff must show that: (1) the defendant was or is a generator or transporter of solid or hazardous waste or owner or operator of a solid or hazardous waste treatment, storage or disposal facility, (2) the defendant has contributed or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste, as defined by RCRA, and (3) that the solid or hazardous waste in question may pose an imminent and substantial endangerment to health or the environment. *See Prisco,* 168 F.3d at 608; *ABB Indus. Sys., Inc. v. Prime Tech., Inc.,* 120 F.3d 351, 359 (2d Cir.1997).

Plaintiffs have adequately stated a claim under RCRA. *See Volunteers of America of Western New York v. Heinrich,* No. 99–CV–6238T(B), 2000 WL 309129, at *6 (W.D.N.Y. Jan.12, 2000) (denying motion to dismiss claim under RCRA § 7002(a)(1)(B) against two defendants); *Kara Holding Corp. v. Getty Petroleum Marketing, Inc.,* 67 F.Supp.2d 302, 309 (S.D.N.Y.1999) (denying in part summary judgment on RCRA claim); *Mutual Life Ins. Co. v. Mobil Corp.,* No. CIVA96CV1781RSP/DNH, 1998 WL 160820, at *1–3, 5 (N.D.N.Y. Mar.31, 1998) (denying defendant's motion to dismiss RCRA and CWA claims arising from gasoline spill); *Singer v. Bulk Petroleum Corp.,* 9 F.Supp.2d 916, 920 (N.D.Ill.1998) (denying defendant's motion to dismiss RCRA claim arising out of petroleum leak, as complaint "specifically allege[d] that petroleum products have migrated through the soil, that petroleum contamination remains in the soil and groundwater near the site, and that such contamination requires a response, either cleanup and or remediation.").

The complaint first alleges that the defendants, including Park–Lincoln and Kerr–McGee, are former owners or occupants of the facility or their successors, that wastes stored at the facility leaked from their storage containers and "have migrated and threaten to migrate from the facility through the air, land and groundwater and that the substances 'posed and continue to pose an imminent danger to the environment.'" Complaint ¶ 4. The complaint further alleges that "[d]efendants have contributed to the past handling, storage, treatment, transportation and disposal of hazardous wastes which may have presented and may still present an imminent and substantial endangerment to health or to the environment. . . ." Complaint. ¶ 52. The allegations in the complaint relating to the plaintiffs' RCRA claim are sufficient to survive defendants' motion to dismiss.

To the extent, however, that plaintiffs seek compensation for any past cleanup efforts, RCRA bars the claim. *Meghrig,* 516 U.S. at 484, 116 S.Ct. 1251 ("RCRA's citizen suit provision is not directed at providing compensation for past cleanup efforts."); *Kara Holding Corp.,* 67 F.Supp.2d 302, 309.

## II Pendent State Law Claims

### A. Article 12 of New York Navigation Law

Plaintiffs also assert a claim under Navigation Law Article 12, known as the Oil Spill Law. That statute provides that "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained." N.Y.Nav. Law § 181(1) [cite]. Navigation Law Article 12 is to be liberally construed, *145 Kisco Ave. Corp. v. Dufner Enterprises, Inc.,* 198 A.D.2d 482, 483, 604 N.Y.S.2d 963

(2d Dep't 1993). There is a private right of action based on strict liability under § 181(5).[3] *See AL Tech Specialty Steel Corp. v. Allegheny International Credit Corp.*, 104 F.3d 601, 609 (3d Cir.1997) ("[I]t is clear that a property owner may under certain conditions sue a prior owner to recover cleanup costs" under § 181(5)); *White v. Long*, 85 N.Y.2d 564, 566, 626 N.Y.S.2d 989, 650 N.E.2d 836 (1995).

■■■■ Defendants argue that plaintiffs' Navigation Law claim should be dismissed for several reasons. First, they argue that § 181(5) of the statute does not apply retroactively to spills that occurred prior to April 1, 1978, when the Navigation Law was passed, while the spills at issue here occurred no later than 1975.

New York case law apparently allows plaintiffs' claim under the Navigation Law for spills that occurred before April 1, 1978. Though Navigation Law § 181(5) became effective on July 26, 1991, *see Leone v. Leewood Service Station, Inc.*, 212 A.D.2d 669, 624 N.Y.S.2d 610, 612 (2d Dep't 1995); *Mendler v. Federal Insurance Co.*, 159 Misc.2d 1099, 607 N.Y.S.2d 1000, 1003 (S.Ct.NY County 1993), a private right of action has existed under the Navigation Law since 1977. *Mendler*, 607 N.Y.S.2d at 1003. "A reading of Navigation Law § 181 clearly reveals that it is remedial in nature and is designated to clarify the fact that a private right of action exists under Article 12 of the Navigation Law." *Id.* Plaintiffs brought this suit nearly two decades after that right was created.

3.   Section 181(5) provides:
     Any claim by any injured person for the costs of cleanup and removal and direct and indirect damages based on the strict liability imposed by this section may be brought directly against the person who has discharged the petroleum, provided, however, that damages recoverable by any injured persons in such a direct claim based on the strict liability imposed by this section shall be limited to the damages authorized by this section.

In addition, Navigation Law § 190-a (added by L. 1980, ch. 649, § 4) provides:
     For purposes of cleanup and removal of any public or private ground water supply system contaminated by a discharge occurring either before or after the effective date of article twelve of this chapter, all relevant provisions of article twelve of this chapter shall apply.

N.Y.Nav.Law § 190-a [cite]. "The clear intendment of Navigation Law § 190-a was to permit recovery for the costs of remediating the effects of discharges that had occurred before the effective date of Navigation Law article 12, as reflected in the statutory language and legislative history." *State v. Cities Service Company*, 180 A.D.2d 940, 941, 580 N.Y.S.2d 512 (3d Dep't 1992).

This Court therefore rejects defendants' contention that providing relief under Navigation Law Article 12 in the instant case is impermissible. "Liability here is imposed for costs incurred and conditions existing subsequent to the enactment of Article 12, albeit resulting from prior acts, and this does not constitute retroactive application." *Cities Service Co.*, 180 A.D.2d 940 at 942, 580 N.Y.S.2d 512.

■■■■ Second, defendants claim that Westmore fuel has failed to allege that the New York State Department of Environmental Conservation ("DEC") authorized it to conduct a spill cleanup and incur "cleanup and removal costs" as defined by Navigation Law § 172(5).[4] Plaintiffs have alleged, however, that at a meeting with Lawrence Ricci of the DEC held on March 14, 1996, they received approval for a

N.Y.Nav.Law § 181(5) (McKinney Supp. 1996).

4.   New York Navigation Law § 172(5) defines cleanup and removal costs as "all costs associated with the cleanup and removal of a discharge including relocation costs ... incurred by the state or its political subdivisions or their agents or any person with approval of the department [NYSDEC]."

remediation plan which was memorialized in a letter sent by Marin to John O'Mara in the DEC's Division of Spills Management on May 17, 1996. Further discovery is needed to determine whether this constituted the authorization that apparently is required under the statute.

Third, defendants allege that plaintiffs have not sufficiently alleged that RBW is a "discharger" under the Navigation law. *See Drouin v. Ridge Lumber, Inc.*, 209 A.D.2d 957, 958, 619 N.Y.S.2d 433 (4th Dep't 1994) ("The statutory scheme makes clear that liability as a 'discharger' is based upon conduct, not status. Article 12 speaks in terms of imposition of liability upon 'dischargers' or persons 'responsible for the discharge') (Navigation Law § 172(3), § 181(1), (5)); *see also*, Navigation Law §§ 175, 176(1); § 188; 17 NYCRR 32.3, 32.5". Discharge is defined in terms of an "action or omission resulting in" a petroleum spill. Navigation Law § 172(8). Defendant Park–Ohio asserts that it was merely an owner of the property, not a discharger and that it cannot be held liable under the statute. Plaintiffs maintain that Park–Ohio was in fact involved in the delivery of petroleum to the site and that further discovery is needed to determine Park–Ohio's exact role at the site. The Court agrees.

The complaint alleges that RBW was the landowner/lessor of the site and that it and the other defendants caused the contamination at the site. This court is unable to determine at this stage, before discovery, whether Park–Ohio's conduct during the relevant period would impose liability under Navigation Law Article 12. *See Mendler*, 607 N.Y.S.2d at 1005 ("in absence of discovery and in view of the conflicting allegations asserted by the parties, it is impossible at this juncture to determine which party or parties might be responsible for the alleged discharge").

Furthermore, New York courts are divided on the issue of whether ownership alone is sufficient to impose liability as a discharger under the law. *Compare Drouin*, 209 A.D.2d 957, 958, 619 N.Y.S.2d 433 ("Nothing in the statute could be construed as making a landowner responsible solely because it is a landowner"), *with, e.g., Matter of White v. Regan*, 171 A.D.2d 197, 575 N.Y.S.2d 375, 376 (3d Dep't 1991) ("This court has consistently construed Navigation Law § 181(1) so as to impose liability on the owner of a system from which a discharge occurred in the absence of evidence that the owner caused or contributed to the discharge"), *leave denied*, 79 N.Y.2d 754, 581 N.Y.S.2d 281, 589 N.E.2d 1263 (1992). The Court of Appeals has yet to rule on the issue, *see White v. Long*, 85 N.Y.2d at 568, 626 N.Y.S.2d 989, 650 N.E.2d 836. This Court likewise declines to reach this issue.

Finally, defendants allege that plaintiff's navigation law claim is time-barred because it is governed by a three-year statute of limitations governing claims for property damage. However, a six-year statute of limitations applies to Navigation Law claims for reimbursement of cleanup costs such as those sought here. *See* CPLR 213(2); *AL Tech*, 104 F.3d at 611 (Navigation law claim for reimbursement of cleanup costs governed by six-year statute of limitations); *State v. Stewart's Ice Cream Co., Inc.*, 64 N.Y.2d 83, 88, 484 N.Y.S.2d 810, 473 N.E.2d 1184 (1984); *Oliver Chevrolet, Inc. v. Mobil Oil Corp.*, 249 A.D.2d 793, 671 N.Y.S.2d 850, 852 (3d Dep't 1998); ("plaintiff's request for reimbursement of the amount it has expended for remediation ... is properly characterized not as a claim for property damage but as one for indemnification"); *145 Kisco Ave. Corp. v. Dufner Enterprises, Inc.*, 198 A.D.2d 482, 604 N.Y.S.2d 963, 964–65 (2d Dep't 1993); *Barclay's Bank of New York, N.A. v. Tank Specialists, Inc.*, 236 A.D.2d 570, 654 N.Y.S.2d 673, 674 (2d Dep't 1997); *750 Old Country Road Realty Corp. v. Exxon Corp.*, 229 A.D.2d 1034, 645 N.Y.S.2d 186, 186 (4th Dep't 1996). The six-year limitations period is measured from the time plaintiff suffered a loss by paying the debt for which it alleges defen-

dant should be held responsible. *Oliver Chevrolet,* 671 N.Y.S.2d at 852.

Accordingly, defendants' motion to dismiss the Navigation Law claim is denied.

## B. Public Nuisance Claim

■ Defendants next move to dismiss plaintiffs' public nuisance claim on grounds that (1) plaintiffs lack standing to assert such a claim because they have suffered no special harm arising from the exercise of a public right and (2) even if they had standing, the claim is time-barred.

■ In *Copart Industries, Inc. v. Consolidated Edison Co.,* 41 N.Y.2d 564, 394 N.Y.S.2d 169, 362 N.E.2d 968 (1977), the New York Court of Appeals defined public nuisance as "conduct or omissions which offend, interfere with or cause damage to the public.in the exercise of rights common to all ... in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons." *Id.* at 172, 362 N.E.2d at 968 (citations omitted); *see also Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distrib. Corp.,* 737 F.Supp. 1272, 1281 (W.D.N.Y. 1990) (citing *Copart Industries,* 41 N.Y.2d 564, 394 N.Y.S.2d 169, 362 N.E.2d 968). In order for a private party to maintain an action for public nuisance, "the harm suffered must be 'of a different kind from that suffered by other persons exercising the same public right.'" *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459, 468 (1983) (quoting RESTATEMENT (SECOND) OF TORTS § 821C comment b (1977)); *see also Chase Manhattan Bank, N.A. v. T & N plc,* 905 F.Supp. 107, 125 (S.D.N.Y.1995); *Leo v. General Electric Co.,* 145 A.D.2d 291, 538 N.Y.S.2d 844, 846 (2d Dep't 1989).

With regard to the issue of what constitutes a public nuisance under state law, the Second Circuit has held that "the release or threat of release of hazardous waste into the environment unreasonably infringes upon a public right and thus is a public nuisance as a matter of New York law." *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1051 (2d Cir.1985) (citations omitted); *see also Leo,* 538 N.Y.S.2d at 846 ("Pollution of navigable public waters which causes death to or contamination of fish constitutes a public nuisance").

Plaintiffs adequately have alleged a public nuisance claim. The complaint states that as a result of the migration of hazardous substances into the land, air and groundwater around the site, "Plaintiffs suffer damages different in kind and degree from the general public in that the creation and maintenance of the nuisance caused plaintiffs to incur and continue to incur substantial costs for controlling, sampling, investigating and remediating the contamination released on its site." Complaint ¶ 64.

Accordingly, defendants' motion to dismiss plaintiffs' public nuisance claim is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss causes of action four and five of the complaint is denied. Defendants' motion to dismiss cause of action two is granted to the extent that plaintiffs seek compensation for past cleanup costs under RCRA. The parties are directed to appear before the Court at a pre-trial conference on May 25, 2000 at 9:15 a.m.