OPINION OF THE COURT
Beverly S. Cohen, J.
Plaintiffs, six individual persons, have sued defendants, operators of various supermarkets in New York County, seeking damages, civil penalties and injunctive relief.
Plaintiffs allege that they are homeless, that they collect returnable cans and bottles as a livelihood, that in April of 1988 each of them presented 240 cans to the various defendants to recover the refund value, and that each defendant failed and refused to accept the 240 cans. Plaintiffs claim that defendants’ conduct violated ECL article 27, title 10 (the New York State Returnable Container Act [the Act]), and section 367.5 (d) of the Regulations of the Department of Environmental Conservation (DEC Regulations; 6 NYCRR 367.5 [d]) promulgated pursuant to the Act by the DEC. In addition, plaintiffs allege defendants failed to display notice of the rules of container redemption on their premises, in violation of Local Laws, 1985, No. 25 of the City of New York and regulations promulgated thereunder.
Plaintiffs move for a preliminary injunction enjoining defendants, pendente lite, from violating the Act, Local Law No. 25 and the regulations.
Defendants have each cross-moved for dismissal of the action.
The Attorney-General of the State of New York, Robert Abrams (AG), has moved, by order to show cause on behalf of himself and Thomas C. Jorling, Commissioner of the New York State Department of Environmental Conservation, for leave to intervene as plaintiffs and for a preliminary injunction. The time for plaintiffs and defendants to respond to the motion has not lapsed.
Defendants’ motion to dismiss should be decided before AG’s motion to intervene and plaintiff’s motion for a preliminary injunction has been argued and briefed. Accordingly, those motions will be decided while the AG’s motions are pending.
*633 THE ACT
The Returnable Container Act, under which plaintiffs are suing (ECL 27-1001 — 27-1019), and the regulations promulgated thereunder (6 NYCRR part 367) establish a scheme to further the declared goal of the Legislature, to protect the environment by reducing the indiscriminate discarding of beverage containers. The backbone of the program is a system of economic incentive to the populace to return the containers for appropriate disposal.
The Act provides in section 27-1007 (1) as follows: "A dealer shall accept at [its] place of business from a redeemer any empty beverage containers of the design, shape, size, color, composition and brand sold by the dealer, and shall pay to the redeemer the refund value of each such beverage container as established by section 27-1005 of this title.”
The Act provides in section 27-1015 (1) as follows: "A violation of this title shall be a public nuisance.”
Section 367.5 (d) of the DEC Regulations states: "A dealer may not limit the number of empty beverage containers to be accepted for redemption at the dealer’s place of business to less than 240 containers per redeemer per day.”
All defendants are within the statutory definition of "dealers”.
Local Law No. 25 requires that dealers display signs advising the public of the rules governing the return of containers; the signs to be as designed by the New York City Commissioner of Consumer Affairs.
THE MOTIONS TO DISMISS
Defendants’ arguments in support of their motions to dismiss rest on two grounds: first, the doctrine of primary jurisdiction; and second, their assertion that plaintiffs do not have a right of action against defendants for violation of the Act.
PRIMARY JURISDICTION
The doctrine of primary jurisdiction, as stated by the Court of Appeals, "is intended to co-ordinate the relationship between courts and administrative agencies to the end that divergence of opinion between them not render ineffective the statutes with which both are concerned” (Capital Tel. Co. v Pattersonville Tel. Co., 56 NY2d 11, 22).
The doctrine exists because where a determination requires *634 special expertise, often the hallmark of a regulatory agency, that determination is best made by the agency. "Though the agency’s jurisdiction is not exclusive, the court postpones its action until it has received the agency’s views” (People v Port Distrib. Corp., 114 AD2d 259, 265). When, however, the determination to be made is merely whether a party has complied with an agency rule or regulation the doctrine of primary jurisdiction is inapplicable (People v Port Distrib. Corp., supra, at 266).
Plaintiffs claim that defendants have violated the DEC regulation requiring dealers to accept up to 240 containers per redeemer per day. Defendants argue that this regulation does not require them to take 240 cans at one time, but only 240 cans per day. They say that any interpretation of the meaning of the rule must be made first by DEC.
The meaning of the regulation at issue can be discerned without any special expertise. It would not be consonant with the intent and purpose of the Act to permit unilateral refusal by a dealer to accept 240 cans at once, subject to private rules of the dealer as to when and how the cans must be presented throughout the day. This rule must be read with 6 NYCRR 367.5 (e) which requires dealers to accept containers at all hours if they are open for business 24 hours a day, and otherwise at all times except within one-half hour of opening and closing. Viewed in this light the regulations can only be interpreted to require dealers to accept up to 240 cans from one redeemer at one time.
It is noted that in connection with these motions plaintiffs have obtained from DEC, and submitted to the court, a declaratory ruling dated July 6, 1989 clarifying the meaning of 6 NYCRR 367.5 (d). This ruling provides in part: "In no event, however, may the dealer refuse to redeem fewer than 240 empty beverage containers at a time.”
Under the circumstances of this case the doctrine of primary jurisdiction does not prevent this court from deciding any of the issues herein raised.
PRIVATE RIGHTS OF ACTION
Plaintiffs claim entitlement to bring suit on the principle that "although an individual cannot institute an action for public nuisance as such, he may maintain an action when he suffers special damage from a public nuisance” (Copart Indus. v Consolidated Edison Co., 41 NY2d 564, 568).
*635 It is undisputed that violation of ECL article 27, title 10 has been denominated a public nuisance. Thus, if plaintiffs have suffered special damage from such violation they may maintain this action. Defendants dispute that plaintiffs have sustained the special damage which the laws make a condition of the individual’s right to sue.
The Court of Appeals reiterated the principle as follows: "Although the allegation of substantial interference with the common rights of the public at large is a sufficient predicate for a private action based on public nuisance * * * and additional expense in the performance of a specific contract can constitute the 'private and peculiar injury’ required for a private action * * * it is, nevertheless, true that the harm suffered must be 'of a different kind from that suffered by other persons exercising the same public right’ and that 'invasions of rights common to all of the public should be left to be remedied by action by public officials’ ” (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 334).
After evaluating the evidence of the plaintiffs’ injury in Burns Jackson (supra) the Court of Appeals affirmed dismissal of their suit based on public nuisance. The court ruled that plaintiff, a law firm which claimed to have suffered loss of business profits and additional out-of-pocket expenses as a result of defendants’ unlawful transit strike, had suffered damages no different from those "suffered by every person, firm and corporation conducting his or its business or profession in the City of New York.” (Burns Jackson Miller Summit & Spitzer v Lindner, supra, at 334.)
Plaintiffs’ right to sue herein depends on their showing that the injury they claim is " 'of a different kind from that suffered by other persons’ ” rather than constituting an " 'invasion * * * of rights common to all’ ”. (Supra, at 334.)
It is the position of defendants that even assuming the truth of plaintiffs’ allegations, plaintiffs have suffered harm no different from that suffered by other members of the general public. "Simply put, everyone, homeless or not, receives money when cans and bottles are redeemed. The harm suffered by 'homeless’ people is, therefore, the same kind of harm suffered by everyone else.” To urge this position is to ignore the huge disparity in economic position between the homeless and others in our city. To act so blindly is to invite the cynical comment of Anatole France: "The law in its majestic equality forbids all men, the rich as well as the poor, *636 to sleep under bridges, to beg in the streets and to steal bread.”
Plaintiffs rely on the case of Leo v General Elec. Co. (145 AD2d 291) for their claim of special damages. They claim that their loss is comparable to the commercial loss of livelihood from the river population caused by General Electric Co. The injury suffered therein was held to be different from and beyond the harm done to members of the community-at-large.
Because plaintiffs are outside the mainstream of society, many of their activities cannot be fit into society’s standard occupational pigeon holes. By ordinary standards it may be difficult to recognize can and bottle gathering as a means of earning a living. But upon examination it can be seen that this gathering of containers has many attributes in common with commercial fishing. Both activities involve taking possession of things which belong to no one, are available to everyone, which are then converted into cash. Whether one earns a livelihood from an activity must be determined by whether a significant portion of one’s sustenance depends on that activity. It should be noted that there are many activities which are a source of support for some people, but are engaged in by others as an avocation, e.g., fishing, child care, carpentry, singing. While some people fish as a hobby, the Leo court protected only commercial fishermen.
Plaintiffs’ analogy to the commercial fisherman is apt and their claim that they sustain unique harm because their livelihood is impaired is valid. Plaintiffs’ affidavits make clear that their meager incomes are substantially and critically affected by their earnings from container redemptions. The difference between the value of $12 (the refund value of 240 cans) to any of the plaintiffs and its value to most other members of the public is so enormous as to make the difference one of kind, rather than merely of degree. It is because of the importance of this source of revenue to them that plaintiffs have brought this action.
Plaintiffs have alleged a harm different from that suffered by other persons who return containers casually, simply to recover the refund value. Plaintiffs are therefore entitled to sue for damages and injunctive relief for injuries resulting from the public nuisance.
Local Law No. 25 of 1985 requires every dealer in the City of New York to post a sign which summarizes the rights and obligations of redeemers under ECL article 27, and authorizes *637 the Commissioner of Consumer Affairs to adopt regulations to implement the purposes of Local Law No. 25. There is no basis for a private right of action for violation of this ordinance. Violation by the defendants has. not been shown to constitute a public nuisance. The law itself contains appropriate remedies for a breach by establishing a civil penalty.
The sign as promulgated by the Department of Consumer Affairs starts out with language:
"BOTTLE BILL OF RIGHTS
"If you buy beer, soda or mineral water in New York State, you pay a deposit on each can or bottle. That gives you certain rights”.
This does not properly state the law governing redemption of containers as the sign gives the impression that one’s right to return containers derives from one’s having purchased beer, soda or mineral water. The rulings of DEC submitted in connection with these motions, particularly Declaratory Ruling DEC 27-17, indicate that such a sign does not meet DEC’s standards for permissible notices. If asked for a declaratory ruling DEC would be quite likely to rule that such a sign could not be posted.
The defendants’ cross motions to dismiss plaintiffs’ complaint are granted to the extent only that the causes of action based on violations of Local Law No. 25 are dismissed; the cross motions are otherwise denied.
PRELIMINARY INJUNCTION
"[0]n a motion for a preliminary injunction the movant must prove three things: (1) likelihood of his ultimate success on the merits; (2) irreparable injury to him absent granting of the preliminary injunction; and (3) a balancing of equities [in his favor]” (Albini v Solork Assocs., 37 AD2d 835).

1. Likelihood of Success

There is little doubt that plaintiffs will prevail on the merits of their claim. In support of their motion, plaintiffs have submitted affidavits documenting 28 instances of clear violations of the law and regulations which occurred in several stores of each of the defendants. The incidents described in the affidavits have not been specifically denied, although defendants have each stated that it is company policy to abide by the provisions of the Act and the regulations.
*638 Defendants assert that they face many problems in connection with receiving containers for redemption. The cost of labor in processing, and rent for storage of empties; the unpleasant appearance of homeless and other poor people clogging the entrance way to their stores; complaints from customers about the homeless; the inequity of their receiving many times the number of containers than they have sold; the fact that many dealers do not accept any returns; and the fact that distributors balk at picking up their empties.
However, in determining whether defendants have violated the law the court cannot consider these problems. The court is charged with applying the law as it is. Redress of inequities, if there be such, must be sought from those charged with making the rules.

2. Irreparable Harm

Plaintiffs’ claim of irreparable harm is based on loss of income which they urge is necessary to their survival. Defendants, relying on cited cases, argue that plaintiffs’ loss of income cannot constitute irreparable harm. The cases cited are inapposite to the issues in this case. In Sampson v Murray (415 US 61, 90) the court was concerned with temporary loss of income, later recoverable, and the Supreme Court found that:
"Even under the traditional standards of Virginia Petroleum Jobbers, supra, it seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury. In that case the court stated:
" 'The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.’ ”
Where the issue was the loss of employment, the Appellate Division found that: "Loss of employment, although most likely to cause severe hardship, does not constitute irreparable damage * * *. The Attorney-General concedes in his brief that the individual respondents will be entitled to reinstatement and back pay in the event they ultimately prevail in the grievance procedure. Under these circumstances, it has repeatedly been held that there is no demonstration of irreparable *639 damage”. (Matter of Armitage v Carey, 49 AD2d 496, 498; emphasis added.)
Cohen v Department of Social Servs. (37 AD2d 626) is to the same effect.
The foregoing cases indicate that where the movant is an employee with a clear expectation of recovery of back pay and reinstatement, no preliminary injunction is warranted. Movants on the other hand are in a precarious economic position not comparable to that of an employee. Their borderline existence level, a critical distinction, makes the injury irreparable.
Defendant D’Agostino’s memo accurately depicts plaintiffs’ status and, despite the words to the contrary, supports plaintiffs’ position: "The plaintiffs are desperate people quite apart from the issues raised in the case at bar. However unfortunate the plight of the homeless is, the fact remains that a retailer dealer’s refusal to accept the plaintiffs’ entire daily quota of containers does not constitute irreparable injury. It purely and simply results in damages that are mathematically ascertainable, i.e., $0.05 per refused container. The fact that the plaintiffs were poor and destitute to begin with cannot change the damage from merely monetary to irreparable.” In the particular circumstances of plaintiffs, defendants’ interference with plaintiffs’ right to redeem containers causes them irreparable injury.
It must also be noted that defendants’ conduct interferes with the purpose and goals of the Act by impeding the return of beverage containers and injures the environment.

3. Balancing of Equities

The irreparable injury to plaintiffs resulting from defendants’ violations of the law has been discussed above.
It is clear that there is not much incentive to the defendants to welcome numbers of the poor and homeless onto their premises to engage in an activity which brings no profit to defendants. It is no wonder that plaintiffs have been hassled and rebuffed by reluctant store managers. The law does not permit this. In the absence of an injunction such conduct can be expected to continue and plaintiffs will continue to be deprived of funds they desperately need.
Against this the harm or damage to defendants from issuance of an injunction must be weighed. Defendants, in effect, claim that the law is burdensome and that they will be *640 harmed by having to obey it. When balancing the equities the court can accord no weight to such a claim. Hardship resulting from obeying the law is not a proper consideration.
Defendants also urge that if they alone are restrained by a preliminary injunction, they would be put at a competitive disadvantage since the injunction would "open the floodgates to volume redeemers like the plaintiffs to the defendants’ stores”. The fact that we do not have all "dealers” as defendants in this action does not mean that injunctive relief, if otherwise appropriate, should be denied against those defendants who are parties. To hold otherwise would create an insurmountable hurdle for any plaintiff with entitlement to that relief.
Under the plaintiffs’ demonstrated circumstances, including extreme poverty, homelessness and the relatively small amounts of money involved in each individual claim, the length of time taken to commence this suit and move for injunctive relief does not preclude the grant of a preliminary injunction.
Plaintiffs’ motion for a preliminary injunction is granted to the following extent only:
Defendants are enjoined from violating the New York State Returnable Container Act (ECL 27-1001 — 27-1019) and the regulations promulgated by the Department of Environmental Conservation, more particularly 6 NYCRR 367.5 (d), requiring a dealer to accept up to 240 cans per day per redeemer who may present 240 ans at one time, pending the final determination of this action.
Filing of an undertaking is not required. CPLR 6312 requires an undertaking by plaintiff to an amount to be fixed by the court representing estimated damages and costs which may be sustained by defendant by reason of the preliminary injunction. This court cannot envision any compensable harm to defendants arising from their having to comply with the law.