Jaquione **JOHNSON**, Plaintiff,

v.

**BRYCO ARMS, et al., Defendants.**

**No. 03 CV 2582(JBW).**

United States District Court,
E.D. New York.

Feb. 3, 2004.

Taub and Marder, New York, NY, by Kenneth Marder, Alison A. Gormley, for Plaintiff.

Lester, Schwab, Katz & Dwyer, LLP, New York, NY, by John Sandercock, for Defendant Acusport, Corp.

Renzulli, Pisciotti & Renzulli, LLP, New York, NY, by Leonard S. Rosenbaum, for Defendant Atlantic Gun & Tackle, Inc.

*MEMORANDUM JUDGMENT & ORDER*

WEINSTEIN, Senior District Judge.

*Table of Contents*

I. Introduction ........................................................... 388

II. Factual Allegations .................................................... 389

III. Law ................................................................. 390
 A. Motion to Dismiss .................................................. 390
 1. Statement of a Claim ........................................... 390
 a. Standard and Scope of Review .............................. 390
 b. Claims ................................................... 390
 1. Public Nuisance ....................................... 390
 A. Causation ......................................... 391
 B. Special Harm ...................................... 392
 i. Physical and Emotional Injury ................. 392
 ii. Pecuniary Injury ............................. 393
 2. Negligence ............................................ 394
 A. Duty .............................................. 394
 B. Causation ......................................... 395
 3. Products Liability .................................... 396
 2. Personal Jurisdiction .......................................... 396
 a. Standard of Review ........................................ 396
 b. New York Long Arm Statute ................................ 397
 c. Criteria for Claims Involving Firearms Sales ............... 397
 B. Amending the Complaint ............................................ 398

IV. Application of Law to Facts ........................................... 398
 A. Motion to Dismiss .................................................. 398
 1. Statement of a Claim ........................................... 398
 a. Public Nuisance ........................................... 398
 b. Negligence ................................................ 399
 c. Products Liability ......................................... 400
 2. Personal Jurisdiction .......................................... 400
 B. Amending the Complaint ............................................ 401

V. Conclusion ........................................................... 401

## I. *Introduction*

While working at a Wendy's restaurant in Flushing, New York in May 2001, eighteen-year-old Jaquione Johnson was shot in the head in the course of an attempted robbery. The weapon used was an illegally acquired semi-automatic pistol.

The two perpetrators ordered Wendy's employees to go down to the basement. There they were lined up, their heads covered with plastic bags, and, one by one, they were shot in the head. Five were killed. Johnson and one other were severely injured. The incident acquired the appellation "The Wendy's Massacre."

Johnson sues the gun's manufacturer (Bryco Arms), the wholesaler (B.L.Jennings), the distributor (Acusport Corp.), and the retailer (Atlantic Gun & Tackle, Inc.). Causes of action for public nuisance, negligence, design defect, breach of warranty, and strict liability are claimed.

Atlantic Gun & Tackle moves to dismiss for failure to state a claim upon which

relief can be granted and for lack of personal jurisdiction. Acusport moves to dismiss for failure to state a claim upon which relief can be granted. Bryco Arms and B.L. Jennings have filed a suggestion of bankruptcy automatically staying these proceedings as to them. *See* 11 U.S.C. § 362(a).

For the reasons set out below the motion to dismiss the products liability claims is granted. Discovery will proceed on the public nuisance and negligence claims and on the issue of personal jurisdiction.

Normally an examination of evidence is not useful in deciding a motion to dismiss. Courts limit themselves to considering the legal bases for the causes of action alleged and assume the plaintiff's version of facts to be true. In evaluating the legal sufficiency of this plaintiff's claims, however, it is desirable to briefly review Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") crime-gun trace data and the marketing practices of the gun industry. Preliminary examination of this material is prudent in light of recent cases interpreting New York law as requiring specific factual backgrounds in order to state a cause of action for public nuisance and negligence against the firearms industry. *See Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 233–39, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001) (requiring a "tangible showing" of certain facts in order to impose a duty on members of the firearms industry to exercise reasonable care in the marketing and distribution of their handguns); *People v. Sturm, Ruger & Co.*, Index No. 402586/00, at 26–27 (N.Y.Sup. Ct. Aug. 10, 2001) (specifically noting facts which, if alleged, might be sufficient to state a cause of action for public nuisance against members of the firearms industry), *aff'd*, 309 A.D.2d 91, 761 N.Y.S.2d 192 (N.Y.App.Div.2003), *leave to appeal de-*

*nied*, 100 N.Y.2d 514, 769 N.Y.S.2d 200, 801 N.E.2d 421 (2003).

## II. *Factual Allegations*

Plaintiff was shot with a .380 caliber semiautomatic pistol by one of the robbers, John Taylor or Craig Godineaux. The gun allegedly was acquired by Taylor or Godineaux following a trail of possession during which the weapon repeatedly changed hands, both legally and illegally. It is contended that the firearm was (1) manufactured by Bryco Arms in California; (2) sold to B.L. Jennings in Nevada; (3) sold to Acusport in Ohio; (4) sold to Atlantic Gun & Tackle in Ohio; (5) sold to Angela Freeman, a resident of Ohio, with the retailer's knowledge that she was purchasing it on behalf of Bernard Gardier because he could not legally purchase it himself; (6) illegally transported by Gardier and one Jamal Gales to New York City, and there illegally sold by them to an unknown individual; and (7) sold twice more before coming into the possession of Taylor or Godineaux.

Plaintiff alleges that defendants' sales and distribution practices created, contributed to and maintained the illegal secondary gun market through which this handgun moved until it did its deadly work. This underground market, it is contended, depended upon defendants' irresponsible business practices, such as multiple firearms sales and straw purchases. It is argued that defendants knew or should have known that their guns were being sold on the underground market and repeatedly used in the commission of crimes, but, because they gained significant revenue from illegal firearms sales, they failed to adopt basic policies and practices that would greatly decrease the number of guns reaching criminals; and that the defendants created and contributed to this illegal secondary market despite the knowledge that it was reasonably foresee-

able that individuals like the plaintiff and the public at large would be harmed. Plaintiff's conclusions rest, in part, upon ATF data indicating that a high proportion of guns distributed by Acusport and subsequently sold by Atlantic Gun & Tackle have been traced to crimes. The gun in question, it is alleged, was sold by Acusport to Atlantic Gun & Tackle, which in turn sold it to a straw purchaser, and was ultimately used to severely injure the plaintiff. Defendants' conduct, the plaintiff concludes, caused his injuries—the kind of harm reasonably foreseeable from these gun companies' delicts.

### III. *Law*

#### A. *Motion to Dismiss*

##### 1. *Statement of a Claim*

###### a. *Standard and Scope of Review*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief may be granted." Defendant has the burden of proving "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

In reviewing a Rule 12(b)(6) motion, the task of the court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). A court must accept the plaintiff's factual allegations as true, drawing all reasonable inference in plaintiff's favor. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). Materials outside the complaint are generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56. *See* Fed. R.Civ.P. 12(b)(6); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) ("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond— that Rule 12(b)(6) motions are ordinarily converted into summary judgement motions."); *see also Festa v. Local 3 Int'l Bhd. Of Elec. Workers*, 905 F.2d 35, 38 (2d Cir.1990) (court's consideration of affidavits filed with motion to dismiss was improper without converting motion to one for summary judgment). The purpose of this practice is to give the non-moving party proper notice, avoiding prejudice.

##### b. *Claims*

###### 1. *Public Nuisance*

A public nuisance under New York law exists when there is a substantial interference with a public right. *See Copart Indus., Inc. v. Consol. Edison Co. of New York*, 41 N.Y.2d 564, 569, 394 N.Y.S.2d 169, 362 N.E.2d 968 (1977). In order for a private party to establish a defendant's liability for this tort, a plaintiff must allege: (1) the existence of a public nuisance; (2) conduct or omissions by a defendant that create, contribute to, or maintain that public nuisance; and (3) particular harm suffered by plaintiff different in kind from that suffered by the community at large. *National Association for the Advancement of Colored People v. Acusport, Inc.*, 271 F.Supp.2d 435, 482 (E.D.N.Y.2003) ("*NAACP*").

■ Under New York law, a claim for public nuisance may lie against members of the gun industry whose marketing and sales practice lead to the diversion of large numbers of firearms into the illegal secondary gun market. *See id.* at 449–51. In *NAACP* extensive discovery and detailed expert testimony demonstrated that gun manufacturers, importers and distributors were responsible for the creation of a public nuisance and that they could, voluntarily and through easily implemented changes, substantially reduce the harm occasioned by the illegal possession and use of handguns. *Id.* at 446; *cf. People v. Sturm, Ruger & Co.,* Index No. 402586/00, at 26–27 (N.Y.Sup.Ct. Aug. 10, 2001) (dismissing public nuisance claim before answers were filed or discovery was taken, but specifically noting facts which, if alleged, might be sufficient to state a cause of action), *aff'd,* 309 A.D.2d 91, 761 N.Y.S.2d 192 (N.Y.App.Div.2003), *leave to appeal denied,* 100 N.Y.2d 514, 769 N.Y.S.2d 200, 801 N.E.2d 421 (2003). For other federal and state cases approving public nuisance claims against members of the firearms industry, see e.g., *Ileto v. Glock,* 349 F.3d 1191 (9th Cir.2003); *White v. Smith & Wesson Corp.,* 97 F.Supp.2d 816 (N.D.Ohio 2000); *Chicago v. Beretta U.S.A. Corp.,* 337 Ill.App.3d 1, 271 Ill.Dec. 365, 785 N.E.2d 16 (2003); *Young v. Bryco Arms,* 327 Ill.App.3d 948, 262 Ill.Dec. 175, 765 N.E.2d 1 (2001); *Gary v. Smith & Wesson, Corp.,* 801 N.E.2d 1222, 2003 WL 23010035 (Ind. Dec.23, 2003); *Boston v. Smith & Wesson Corp.,* 2000 WL 1473568 (Mass.Super. July 13, 2000); *James v. Arms Tech. Inc.,* 359 N.J.Super. 291, 820 A.2d 27 (2003); *Cincinnati v. Beretta U.S.A. Corp.,* 95 Ohio St.3d 416, 768 N.E.2d 1136 (2002).

### A. *Causation*

■ Persons who join or participate in the creation or maintenance of a public nuisance are liable jointly and severally for the wrong and resulting injury. *Simmons v. Everson,* 26 N.E. 911, 124 N.Y. 319 (N.Y.1891); *Irvine v. Wood,* 51 N.Y. 224 (N.Y.1872); 81 N.Y. Jur.2d, Nuisances, § 59. Nuisance damages are capable of apportionment among multiple tortfeasors where a reasonable basis can be found for dividing the harm on the basis of the extent of the contribution of each party. Restatement (Second) of Torts, § 840E cmt. b.

■ "[C]reation of a public nuisance in the aggregate arises where it is difficult or impossible to separate the injury done by one contributing actor from that done by another and where the injury imposed by each contributing actor individually does not constitute a substantial interference with a public right." *NAACP,* 271 F.Supp.2d at 493. "In a public nuisance claim brought by a private plaintiff seeking damages, causation—that a defendant created, contributed to or maintained the alleged public nuisance—cannot be based on conduct creating only in the aggregate a public nuisance." *Johnson v. Beemiller,* 2003 WL 21697025, *1 (E.D.N.Y. July 21, 2003) (citing *Chipman v. Palmer,* 77 N.Y. 51, 54–57 (1879); Restatement (Second) of Torts, § 840E); *see also NAACP,* 271 F.Supp.2d at 493.

In *Johnson v. Beemiller,* this court dismissed a case brought against various firearms manufacturers and distributors because causation was predicated on conduct creating a public nuisance only in the aggregate. 2003 WL 21697025 (E.D.N.Y. July 21, 2003). Since the gun used in the *Beemiller* shooting was never recovered, plaintiff sued those companies responsible for manufacturing or distributing .380 caliber semi-automatic pistols, the same type of gun used to shoot and kill the victim. *See* Complaint, *Johnson v. Beemiller,* 2003

WL 21697025 (E.D.N.Y. July 21, 2003) (No. 03–0066). In contrast, private plaintiffs claiming a public nuisance have been permitted to seek damages when it has been possible to identify the source or sources of the particular firearm that caused special harm to the plaintiff. *See Ileto v. Glock*, 349 F.3d 1191, 1216 (9th Cir.2003) (approving public nuisance claim against manufacturers and distributors of guns used during shooting but dismissing claim as to those defendants whose guns were part of the shooter's arsenal but were not fired); *Young v. Bryco Arms*, 327 Ill. App.3d 948, 262 Ill.Dec. 175, 765 N.E.2d 1, 19–20 (2001) (plaintiffs permitted to assert public nuisance claim only against those defendants who manufactured, distributed or sold one of the guns identified in the killings).

### B. *Special Harm*

■ A private plaintiff does not have standing to bring a public nuisance cause of action unless he or she shows some harm different from that suffered by the public generally. *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.*, 96 N.Y.2d 280, 292, 727 N.Y.S.2d 49, 750 N.E.2d 1097 (2001). The harm must be different in kind, not just in degree. *NAACP*, 271 F.Supp.2d at 498 (citing *Graceland Corp. v. Consol. Laundries Corp.*, 7 A.D.2d 89, 180 N.Y.S.2d 644 (1958)). "When the injury claimed to be peculiar is of the same kind suffered by all who are affected, when it is common to the entire community, or . . . becomes so general and widespread as to affect a whole community, the injury is not peculiar and the action cannot be maintained." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 334–35, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983) (internal quotations and citations omitted). This principle recognizes the need to avoid the multiplicity of lawsuits that would re-

sult if everyone were permitted to bring suit for the invasion of general rights common to all of the public. Restatement (Second) of Torts, § 821C cmt. b.

■ The fact that multiple persons are injured does not make the nuisance such a common one as to exclude redress by a private individual; an action may be maintained by one who is not the sole sufferer when the grievance is not common to the whole public, but is shared by a number or even a class of persons. *Lansing v. Smith*, 4 Wend. 9 (N.Y.1829); 81 N.Y. Jur.2d, Nuisances, § 57. As long as they have sustained a special injury, each—no matter how numerous—is entitled to compensation. *Francis v. Schoellkopf*, 53 N.Y. 152, 154–55 (N.Y.1873); 81 N.Y. Jur.2d, Nuisances, § 57.

#### i. *Physical and Emotional Injury*

■ Physical injuries to particular persons are generally sufficient to constitute harm different in kind under New York law. *See Andersen v. Univ. of Rochester*, 91 A.D.2d 851, 458 N.Y.S.2d 404 (1982); 81 N.Y.Jur.2d, Nuisances, § 58; *see generally Overcash v. South Carolina Electric & Gas Co.*, 356 S.C. 165, 588 S.E.2d 116, 122–23 (2003) (listing numerous state court decisions in which physical injuries have been held to be harm different in kind for the purpose of maintaining a public nuisance claim); Restatement (Second) of Torts, § 821C cmt. d ("When the public nuisance causes personal injury to the plaintiff . . . , the harm is normally different in kind from that suffered by other members of the public and the tort action may be maintained."); Prosser, *Private Action for Public Nuisance*, 52 Va. L.Rev. 997, 1012 (1966) ("[T]here can be no doubt that the nuisance action can be maintained where a public nuisance causes physical injury."). For cases finding that emotional injuries

can constitute special injury see e.g., *Corgan v. Muehling,* 167 Ill.App.3d 1093, 118 Ill.Dec. 698, 522 N.E.2d 153 (1988) (patient's emotional trauma resulting from psychologist's negligent treatment of her was harm different in kind); *Wilson v. Parent,* 228 Or. 354, 365 P.2d 72 (1961) (woman who was subject of obscene words in public street experienced harm different in kind).

The Court of Appeals for the Ninth Circuit has held that, under California law, the physical and emotional trauma suffered by gunshot victims is different in kind from "the danger, fear, inconvenience, and interference with the use and enjoyment of public places that affect the tenor and quality of everyday life" experienced by the general public as a result of gun violence. *Ileto v. Glock,* 349 F.3d 1191, 1212 (9th Cir.2003) (internal quotations omitted). It also found that the physical and emotional injuries suffered by a witness to the shootings were different in kind from those suffered by the general public. *Id.* In reaching this decision the court followed an analysis consonant with New York law. It made clear that it was referring to the severe physical and emotional trauma suffered from the actual firing of the gun, not simply the fear or inconvenience of gun violence. *See id.* at 1216 ("[U]nder a nuisance claim, the requirement that plaintiffs allege injuries different in kind from those suffered by the general public, could not be met under … circumstances when the gun at issue was not actually fired."); *see also Young v. Bryco Arms,* 327 Ill.App.3d 948, 262 Ill. Dec. 175, 765 N.E.2d 1, 20 (2001) (survivors of individuals shot and killed by juvenile gang members had standing to assert public nuisance claim only against those defendants who manufactured, distributed or sold the firearms used in the killings).

Dismissal of the public nuisance suit in *NAACP* was based on the finding that the organization failed to prove it suffered harm different in kind from the general population in New York as a result of the imprudent marketing practices of the defendant gun manufacturers and distributors. 271 F.Supp.2d at 526. The special injuries alleged by the plaintiff included testimony that some members of the organization were afraid to attend meetings because of the high level of gun violence in their neighborhoods and that there is a higher rate of fire-arm related deaths and injuries among the membership of the NAACP and the African–American community whose interests it represents. *Id.* at 508–09. These injuries could not be classified as different in kind under New York law because the general fear of and risk from handguns extends to all members of the public. *Id.* Unlike the plaintiffs in *Ileto,* the NAACP did not bring any claims arising out of the manufacture, distribution or sale of a particular firearm alleged to have been illegally used in a shooting causing harm to the plaintiff.

ii. *Pecuniary Injury*

 Pecuniary injury may constitute harm different in kind so long as it is not common to an entire community. *532 Madison Avenue Gourmet Foods, Inc. v. Finlandia Center, Inc.,* 96 N.Y.2d 280, 727 N.Y.S.2d 49, 750 N.E.2d 1097 (2001); *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983); *Leo v. General Electric Co.,* 145 A.D.2d 291, 538 N.Y.S.2d 844 (N.Y.App.Div.1989); *Farmer v. D'Agostino Supermarkets, Inc.,* 144 Misc.2d 631, 544 N.Y.S.2d 943 (N.Y.Sup. Ct.1989); 81 N.Y.Jur.2d, Nuisances, § 58; Restatement (Second) of Torts § 821C cmt. h. Thus, commercial fishermen have been found to have standing to sue a river polluter for a public nuisance because they

had been specially injured by a state ban on the sale of fish obtained from waters polluted by the defendant. *Leo*, 538 N.Y.S.2d at 847 ("Diminution or loss of livelihood is not suffered by every person who fishes in the Hudson River or waters of Long Island."). Similarly, homeless people have been permitted to maintain a public nuisance action against various stores for refusing to redeem large quantities of returnable cans and bottles per day on the ground that they suffered an impairment to their livelihood. *Farmer*, 544 N.Y.S.2d at 947 ("Plaintiffs have alleged a harm different from that suffered by other persons who return containers casually, simply to recover the refund value."). In contrast, increased expenses or lost business profits resulting from a nuisance, although they may be different in degree, do not constitute harm different in kind to that suffered by the public. *See, e.g., 532 Madison Avenue Gourmet Foods, Inc.*, 96 N.Y.2d at 293–94, 727 N.Y.S.2d 49, 750 N.E.2d 1097 (lost profits of various businesses due to building collapse did not constitute injury different from that suffered by the public at large); *Burns Jackson Miller Summit & Spitzer*, 59 N.Y.S.2d at 334, 451 N.E.2d 459 (law firms' lost profits resulting from closure of New York City transit system during a strike did not constitute injury different from that suffered by the public at large).

## 2. Negligence

■ To prevail on a negligence claim, a plaintiff must establish the following elements under New York law: (1) that the defendant owed him or her a duty of care; (2) that the defendant breached this duty by engaging in conduct posing an unreasonable risk of harm and (3) that defendant's breach proximately resulted in damage to the plaintiff. *See, e.g., Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981).

### A. Duty

■ "A defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." *D'Amico v. Christie*, 71 N.Y.2d 76, 88, 524 N.Y.S.2d 1, 518 N.E.2d 896 (1987). This duty arises when "the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm." *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 233, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001).

In *Hamilton v. Beretta*, the New York Court of Appeals held that persons killed by illegally obtained handguns are not owed a duty by handgun manufacturers to exercise reasonable care in the marketing and distribution of their handguns. *Id.* at 240, 727 N.Y.S.2d 7, 750 N.E.2d 1055. The court, however, did not bar all such negligence claims, stating, "Tort law is ever changing; it is a reflection of the complexity and vitality of daily life . . . Whether in a different case, a duty may arise remains a question for the future." *Id.* at 242, 727 N.Y.S.2d 7, 750 N.E.2d 1055. Rather, it predicated its decision in *Hamilton* on plaintiffs' inability to make a tangible showing that: (1) "defendants were a direct link in the causal chain that resulted in plaintiffs' injuries"; (2) "defendants were realistically in a position to prevent the wrongs;" or (3) there was any "statistically significant relationship between particular classes of dealers and crime guns." *See id.* at 234, 236, 727 N.Y.S.2d 7, 750 N.E.2d 1055; *cf. Ileto v. Glock*, 349 F.3d 1191, 1204–05 (9th Cir.2003) (plaintiffs' allegations that defendants' marketing and distribution strategies were designed to

increase firearms sales to illegal buyers were sufficient to meet the requirements for establishing a duty of care).

■■■ Upon a showing that a specific class of manufacturers or dealers play a disproportionate role in supplying the criminal gun-trafficking market, the *Hamilton* court suggested that a duty may be imposed. It discussed doing so under the negligent entrustment theory: "[This] doctrine might well support the extension of a duty to manufacturers to avoid selling to certain distributors in circumstances where the manufacturer knows or has reason to know those distributors are engaging in substantial sales of guns into the gun-trafficking market on a consistent basis." *Id.* at 237, 727 N.Y.S.2d 7, 750 N.E.2d 1055. Under the negligent entrustment doctrine, "[t]he possessor of a dangerous instrument is under a duty to entrust it to a responsible person whose use will not create an unreasonable risk of harm to others. The duty may extend through successive, reasonably anticipated entrustees." *Id.* at 236–37, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (citing *Rios v. Smith,* 95 N.Y.2d 647, 722 N.Y.S.2d 220, 744 N.E.2d 1156 (2001); *Splawnik v. DiCaprio,* 146 A.D.2d 333, 540 N.Y.S.2d 615 (N.Y.App.Div.1989); Restatement (Second) of Torts § 390).

### B. Causation

■■■ The defendant's acts or omissions must have been the proximate cause of the plaintiff's injury. To satisfy this element, a plaintiff must establish that the defendant's negligence was a substantial foreseeable factor in bringing about his or her injury. *See, e.g., Nallan v. Helmsley–Spear, Inc.,* 50 N.Y.2d 507, 520, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980); *Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980). The issue of proximate cause is generally a question of fact for the jury, *see, e.g., Mercado v. Vega,* 77 N.Y.2d 918, 569 N.Y.S.2d 595, 572 N.E.2d 36 (1991); *Derdiarian,* 51 N.Y.2d at 315, 434 N.Y.S.2d 166, 414 N.E.2d 666, unless only one conclusion may be drawn from the established facts and the question of legal cause may be decided as a matter of law. *See Alexander v. Eldred,* 63 N.Y.2d 460, 468, 483 N.Y.S.2d 168, 472 N.E.2d 996 (1984).

■■■ An intervening act by a third party does not necessarily break the causal connection between the defendant's negligence and a plaintiff's injury. *Derdiarian,* 51 N.Y.2d at 315, 434 N.Y.S.2d 166, 414 N.E.2d 666. To break the legal chain, the intervening act must have been "of such an extraordinary nature or so attenuated from the defendants' conduct that responsibility for the injury should not reasonably be attributed to them." *Gordon v. Eastern Ry. Supply, Inc.,* 82 N.Y.2d 555, 562, 606 N.Y.S.2d 127, 626 N.E.2d 912 (1993). If the intervening act was a foreseeable consequence of the defendant's negligence, he will be held liable. *Derdiarian,* 51 N.Y.2d at 315, 434 N.Y.S.2d 166, 414 N.E.2d 666. Failure to take reasonable steps to guard against a foreseeable criminal act is negligent. *See, e.g., Bell v. Board of Educ. of the City of New York,* 90 N.Y.2d 944, 946, 665 N.Y.S.2d 42, 687 N.E.2d 1325 (1997); *Kush v. City of Buffalo,* 59 N.Y.2d 26, 33, 462 N.Y.S.2d 831, 449 N.E.2d 725 (1983). Whether a superseding cause exists and whether it was foreseeable is ordinarily decided by the factfinder. *Derdiarian,* 51 N.Y.2d at 315, 434 N.Y.S.2d 166, 414 N.E.2d 666.

In *Hamilton* the New York Court of Appeals left open the possibility that, despite subsequent legal purchasers or even thieves, a causal connection might be shown between the harm suffered by gunshot victims and the conduct of members

of the gun industry. 96 N.Y.2d at 234, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (liability could not be imposed "without a more tangible showing that defendants were a direct link in the causal chain that resulted in plaintiffs' injuries, and that defendants were realistically in a position to prevent the wrongs"); *see also Ileto v. Glock,* 349 F.3d 1191, 1206 (9th Cir.2003) (finding that the negligence claim was distinguishable from *Hamilton* on the basis that it sufficiently alleged a direct link between the manufacturers' distribution practices and the illegal sale of the gun used to kill the plaintiff).

### 3. *Products Liability*

 Under New York law a design defect results when the product as designed is unreasonably dangerous for its intended use. *Micallef v. Miehle Co.,* 39 N.Y.2d 376, 385, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976). "This rule, however, is tempered by the realization that some products, for example knives, must by their very nature be dangerous in order to be functional." *Robinson v. Reed–Prentice Division,* 49 N.Y.2d 471, 479, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980). Breach of warranty occurs when the absence or inadequacy of a warning for a reasonably foreseeable risk accompanying a product causes harm. *Torrogrossa v. Towmotor Co.,* 44 N.Y.2d 709, 405 N.Y.S.2d 448, 376 N.E.2d 920 (1978).

 "The mere act of manufacturing and selling a handgun does not give rise to liability absent a defect in the manufacture or design of the product itself." *Hamilton v. Accu-tek,* 935 F.Supp. 1307, 1323 (E.D.N.Y.1996), *rev'd on other grounds sub nom. Hamilton v. Beretta USA Corp.,* 264 F.3d 21 (2d Cir.2001). "For a viable New York tort law design defect claim against a handgun manufacturer, a plaintiff must allege that a particu-

lar model in question is unreasonably dangerous." *Hamilton,* 935 F.Supp. at 1323. A gun, whose very function is to cause injury or to kill, is not defective simply because it accomplishes that purpose. *See, e.g., McCarthy v. Olin Corp.,* 119 F.3d 148, 155 (2d Cir.1997) (design of hollow-point bullets not defective); *DeRosa v. Remington Arms Co., Inc.,* 509 F.Supp. 762, 767 (E.D.N.Y.1981) (design of trigger pull on shotgun not defective); *Forni v. Ferguson,* 232 A.D.2d 176, 648 N.Y.S.2d 73, 74 (1996) (design of pistol, ammunition and magazine of semi-automatic handgun not defective). The absence of an anti-theft or other safety device probably does not make a firearm unreasonably dangerous at this present stage of technology. *See McCarthy,* 119 F.3d at 155; *Hamilton,* 935 F.Supp. at 1324 (quoting *Robinson v. Reed–Prentice Division,* 49 N.Y.2d 471, 481, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980) ("A manufacturer need not incorporate safety features into its product so as to guarantee that no harm will ever come to any user [or bystander] no matter how careless or reckless [the user may be].")).

 Those who carry on abnormally dangerous activities are strictly liable for the harm inflicted by that activity. *Spano v. Perini,* 25 N.Y.2d 11, 15, 302 N.Y.S.2d 527, 250 N.E.2d 31 (1969); Restatement (Second) of Torts § 519(1). Strict liability, however, does not attach to injuries resulting merely from the use of a dangerous instrumentality such as a firearm. *McCarthy,* 119 F.3d at 156; *Hamilton,* 935 F.Supp. at 1324.

### 2. *Personal Jurisdiction*

#### a. *Standard of Review*

 A defendant may move for lack of jurisdiction over his or her person pursuant to Federal Rule of Civil Procedure 12(b)(2). If a defendant does not object to the assertion of personal jurisdiction in the

first Rule 12 motion or in the responsive pleading, it is deemed waived. Fed. R.Civ.P. 12(h)(1). The burden of proving jurisdiction is on the party asserting it. *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). If, however, a defendant brings a motion to dismiss for lack of personal jurisdiction before any discovery has been conducted, plaintiff "need only allege facts constituting a prima facie showing." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997). As with a motion to dismiss for failure to state a claim, plaintiff's jurisdictional allegations are accepted as true and any factual disputes are resolved in plaintiff's favor. *See Metropolitan Life Ins. Co.*, 84 F.3d at 566.

### b. New York Long Arm Statute

■ Personal jurisdiction in diversity cases is determined in accordance with the law of the forum state. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir.1963). Jurisdiction in this case is asserted pursuant to the New York long arm statute. It provides:

> [A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or service rendered, in the state. . . .

N.Y. C.P.L.R. § 302(a)(3).

■ In addition to demonstrating that all requirements for jurisdiction under this subsection are met, plaintiff must establish that an exercise of jurisdiction would comport with federal due process. Due process requires that: (1) the defendant has sufficient "minimum contacts" with the State of New York to justify the exercise of personal jurisdiction; and (2) the assertion of jurisdiction is reasonable under the circumstances. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Metropolitan Life Ins. Co.*, 84 F.3d at 567.

### c. Criteria for Claims Involving Firearms Sales

The *NAACP* case, noting that the harm alleged went beyond that of simply placing firearms into the stream of commerce, developed criteria "to serve as guideposts" in analyzing the appropriateness of the exercise of jurisdiction over gun manufacturers and distributors in a public nuisance case. *NAACP v. A.A. Arms, Inc.*, 2003 WL 21242939, at *3–5 (E.D.N.Y. Apr.1, 2003). They include:

> 1) crimes committed in New York with the defendant's handguns; 2) total number of handguns that defendant manufactured or sold in the United States; 3) number of handguns sold by the defendant in New York; 4) value of gun-related products sold by the defendant in New York; 5) number of "trace" handguns linked to criminal investigations in New York that are attributable to the defendant; 6) sales prices of the defendant's handguns . . .; 7) type of gun and its intended use . . .; 8) connection with the defendant's related companies; 9) distribution methods and their possible effects on crimes in New York; and 10) the defendant's total revenue from the United States and New York markets.

*Id.* at *4. Total number of handguns manufactured, sold and traced in New York and the United States and distribution practices with a possible effect on crime in New York were found to be "particularly salient." *Id.* at *5.

## B. *Amending the Complaint*

The Federal Rules of Civil Procedure encourage allowing amendment of a complaint. Rule 15(a) reads:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

In exercising discretion to grant leave to amend, courts "should be guided by the underlying purpose of allowing amendment to facilitate a decision on the merits." 3 Moore's Federal Practice § 15.14[1]; *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

■■■■ Courts may deny a motion to amend on the basis of undue delay, bad faith or dilatory motive, undue prejudice to the opposing party, or futility of the amendment. *Id.* "The Rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non-movant of prejudice or bad faith." *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993) (citing *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981)). In determining whether prejudice is undue, the court considers whether the amendment "would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; *or* (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block,* 988 F.2d at 350 (emphasis added).

## IV. *Application of Law to Facts*

### A. *Motion to Dismiss*

#### 1. *Statement of a Claim*

##### a. *Public Nuisance*

■■■■ Plaintiff alleges that defendants' marketing, distribution and sales practices create a secondary illegal gun market, leading to a public nuisance in New York. He is a private litigant seeking monetary damages for injury to himself. He does not seek injunctive or any other equitable relief.

Alleged are facts sufficient to make out a prima facie claim of public nuisance. Plaintiff states that the defendants' marketing, distribution and sales practices unreasonably interfere with the property, health, safety and comfort of the general public by facilitating the diversion of large numbers of firearms from the legal primary market to the illegal underground market. Such business practices include straw purchases (sales to a person authorized to buy firearm but buying on behalf of someone not so authorized such as a felon or youth); multiple purchases (sales of a number of guns to the same consumer at the same time); and repeat sales (sale of a number of guns to the same person over a relatively short period of time). Plaintiff contends that defendants continued to engage in these practices despite knowledge, through ATF crime-gun traces and other sources, that their firearms were disproportionately being diverted into the illegal market and that one of the guns moving through that illicit channel caused his injuries.

Plaintiff does not allege that the defendants created and contributed to this public nuisance in the undifferentiated aggregate; rather, he argues they should be held jointly and severally liable. Instead of suing multiple members of the firearms

industry, plaintiff limits his suit to those companies present in the chain of distribution by which the particular gun causing him harm made its way into the hands of his attackers who foreseeably used it to shoot him. Since the gun used to injure him has been recovered, plaintiff has been able to identify the manufacturer, wholesaler, distributor and retailer of that firearm; he alleges tortious conduct as to each defendant. This is not a situation in which plaintiff is unable to separate and quantify the contribution of each party to the public nuisance. Nor is it a case in which each defendant contributed to the public nuisance to such a slight extent that its participation taken by itself would not be a substantial interference with a public right.

The injuries claimed are different in degree and in kind from those suffered by the general public. Plaintiff alleges that he has suffered permanent physical and emotional injuries as a result of the shooting. His physical injuries include permanent brain damage and paralysis. Psychologically, he has suffered severe emotional trauma as a result of the execution-style shootings he was forced to witness, as well as survivor's guilt due to the fact that he was only one of two people to survive while five of his colleagues were killed. He further claims loss of livelihood, alleging that he will never be able to hold meaningful employment, complete his education, or live on his own. Plaintiff's injuries from the shooting, while clearly different in degree, are also different in kind from the danger, fear, inconvenience, and interference with the use and enjoyment of public places that affect the tenor and quality of everyday life experienced by the general public as a result of the threat of gun violence.

b. *Negligence*

 Since plaintiff states facts that establish a duty on the part of gun compa-

nies to exercise reasonable care in the marketing and sales of their product, it is premature to dismiss his negligence claim. The claim involves the sort of factual scenario envisioned in *Hamilton* by the New York Court of Appeals. In particular, plaintiff alleges that defendants were a direct link in the causal chain that resulted in his injuries and that they were in the best position to prevent the foreseeable harm he suffered. Discovery is needed to determine whether he should be allowed to proceed on this theory.

 Because the firearm used in the Wendy's massacre was recovered, plaintiff can identify the manufacturer, wholesaler, distributor and retailer of the gun. He contends that the distributor, Acusport, negligently entrusted the firearm in question to the retailer, Atlantic Gun & Tackle, despite the knowledge that it was consistently engaging in sales that diverted guns into the illegal, underground firearms market. He further alleges that Atlantic Gun & Tackle sold the gun in question to Angela Freeman although it knew or should have known that she was a straw purchaser who was buying the gun on behalf of Bernard Gardier who could not legally purchase it himself. Although the firearm subsequently changed hands illegally a number of times before ultimately coming into the possession of plaintiff's attackers, it is alleged that defendants were put on notice that this kind of transfer would foreseeably occur. Plaintiff relies upon ATF data establishing that a high proportion of defendants' guns were the subject of crime-gun traces.

Plaintiff also contends that defendants are part of a small group of corrupt or negligent gun companies which play a disproportionate role in supplying the illegal gun market. He alleges that defendants'

marketing and distribution practices result in guns moving more readily into the illegal market than do those of other distributors or retailers and that defendants had the power to stop the flow of their guns into the illegal market but did not do so. In support of his assertion, he quotes an ATF report which cites Atlantic Gun & Tackle as the second highest offender among gun dealers whose firearms account for an unusually large proportion of crime-guns. Bureau of Alcohol, Tobacco and Firearms, *Commerce in Firearms in the United States* 23–24 (Feb.2000).

The New York Court of Appeals decision in *Hamilton* was, in part, predicated on the inability in that case to determine whether a high incidence of traces was attributable to irresponsible conduct on the part of certain members of the gun industry. Nearly three years later, significantly more evidence is available. In *NAACP*, extensive discovery and detailed expert testimony based upon ATF data and other material demonstrated that it could be concluded that the defendant gun companies had engaged in irresponsible marketing, distribution and sales practices and that they could, voluntarily and through easily implemented changes, keep thousands of handguns from diversion into criminal use in New York. Acusport was one of the defendants in that case. Another study, using research obtained and analyzed in the course of the *NAACP* case, reports that, from 1996–2000, Atlantic Gun & Tackle had 909 gun traces with trafficking indicators. (Trafficking indicators include guns with obliterated serial numbers, multiple purchases in which more than one gun was sold to one individual, guns recovered in a state other than where they were bought, and guns traced back to a store that repeatedly reports firearm thefts.) *See* Americans for Gun Safety Research, *Selling Crime: High Crime Gun Stores Fuel Criminal* 6–7, 9 (Jan.2004). The evidence provided by *NAACP* expert testimony and other authoritative reports lends support to plaintiff's allegations and, in conjunction with the direct causal connection alleged between defendants' business practices and plaintiff's injuries, is sufficient to sustain the negligence claim against a Rule 12(b)(6) motion.

### c. Products Liability

Plaintiff alleges that defendants distributed and sold a defective firearm because it was designed without a safety or anti-theft device. He further claims breach of the warranty of merchantability because of the lack of proper safety devices. Finally, he alleges defendants should be strictly liable because firearms constitute ultrahazardous activities.

This is not a valid claim upon which relief can be granted. Plaintiff has not alleged that the gun used was in defective condition. Under New York law the absence of a safety device does not give rise to liability under a design defect or breach of warranty theory. Plaintiff, however, argues that the law warrants reconsideration in light of the fact that the technology to make guns safer is now available. To do so, however, would require a balancing of the risk versus the utility of incorporating safety devices into the design of firearms, an approach thus far expressly rejected by the courts.

Plaintiff's products liability claims fail as a matter of law. They are dismissed.

### 2. Personal Jurisdiction

Plaintiff has made a prima facie showing sufficient to establish personal jurisdiction over Atlantic Gun & Tackle pursuant to New York's long arm statute. He alleges it has committed the torts of public nuisance and negligence outside this state, causing him severe physical and emotional

injury within New York, and that it has regularly done business or engaged in other persistent conduct in New York and derives substantial revenue from goods used in this state. Such conduct satisfies criteria previously determined to support a court's exercise of jurisdiction over gun companies. *See NAACP*, 2003 WL 21242939, at *3–5. It includes allegations that there have been crimes committed in New York with the defendant's guns; that there are a significant number of traces linked to criminal investigations in New York that are attributable to the defendant's conduct; and that defendant's distribution practices have a substantial effect on crime in New York.

Finally, plaintiff claims that further discovery will allow him to acquire evidence establishing even more of the factors for determining personal jurisdiction set forth in *NAACP*. Because the elements for determining personal jurisdiction in a case such as this are fact-intensive, it is appropriate to deny the motion to dismiss for lack of personal jurisdiction pending further discovery.

### B. *Amending the Complaint*

There are no circumstances warranting denial of the motion to amend the complaint. Since Atlantic Gun & Tackle has not yet filed a responsive pleading, plaintiff may amend his complaint as of right as to that defendant. Although Acusport has filed an answer, it would not be prejudiced by plaintiff's proposed amendments. The amended complaint simply advances additional details; it does not include new claims or any other information that could not have been deduced from the original complaint. No additional resources, beyond those already contemplated, are required to proceed with discovery. Although plaintiff moved to amend his complaint subsequent to the filing of defendants' motion to dismiss, the proposed amendments have no prejudicial effect on the motion.

### V. *Conclusion*

The motion to dismiss for failure to state a claim is denied except that plaintiff's products liability claims are dismissed. The motion to dismiss for lack of personal jurisdiction is denied with leave to renew after further discovery. The motion to amend the complaint is granted.

Discovery will proceed on an expedited basis under the direction of the magistrate judge.

SO ORDERED.